Mark W. CHICHAKLY, also known as Mowaffak Wadi Chichakly, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 89–2162.

United States Court of Appeals, Seventh Circuit.

Submitted June 1, 1990.

Decided Feb. 21, 1991.

Mark W. Chichakly, Danbury, Conn., pro se.

David L. Rimstidt, Rimstidt, Yackey & Ladd, Indianapolis, Ind., Daniel E. Man-ville, Detroit, Mich., Efrem A. Gordon, Springfield, Mass., for petitioner-appellant.

Deborah J. Daniels, U.S. Atty., David L. Ryan, Susan E. Heckard, Asst. U.S. Atty., Indianapolis, Ind., for respondent-appellee.

Before CUDAHY, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

After entering a plea of guilty Mark W. Chichakly was convicted on four counts of willful failure to file federal income tax returns in violation of 26 U.S.C. § 7203. Thereafter he filed a writ of habeas corpus alleging ineffective assistance of counsel and incompetence to plead guilty by reason of the influence of prescription drugs, and the district court denied his motion. We affirm.

## I. FACTS

Dr. Chichakly, with a successful radiology practice of some 40 years, failed to file federal income tax returns since 1973.[1] Each year from 1973 to 1986, Dr. Chichakly filed requests for an extension of time to file his returns but failed to file the returns (in 1985 he filed neither a request for an extension of time nor a return). On June 8, 1987, a federal grand jury handed down a four-count indictment charging Dr. Chichakly with willful failure to file federal income tax returns for the years 1981 through 1984 pursuant to 26 U.S.C. § 7203,[2] years in which he averaged an income of over $150,000.

The defendant entered into plea negotiations with the government shortly after the indictment, but the parties failed to reach an agreement.[3] In a letter dated August

---

1. In 1973 an IRS audit of his 1971 and 1972 tax returns resulted in a deficiency assessment of approximately $42,000, which remains unpaid.

2. During the sentencing proceedings the prosecuting attorney asserted that there were grounds for further charges, but he was forced to analyze 20 boxes of evidence in two days in light of rumors that the defendant was about to skip the country; he felt compelled to accelerate the filing of the indictment dealing with the years at issue without pursuing the evidence of violations in prior years in order that he might foreclose the defendant's escape. The prosecuting attorney decided against seeking a superseding indictment, since plea negotiations began almost immediately, and bringing it after the negotiations broke down could have appeared vindictive.

3. After reaching an oral agreement with the defendant regarding a guilty plea, the government submitted a written plea agreement that included requirements (which the parties had not discussed) involving a trust the defendant had established for his children. The defendant

19, 1987, Dr. Chichakly's attorney informed him of the attorney's view of the case. He stated that, in his opinion, the trial judge has "an extremely simplistic view of these cases. If you had income and did not file taxes you are guilty." The attorney felt that he could build a defense based on Dr. Chichakly's lack of "willfulness," but he did not think the defense was likely to succeed, for the judge appeared to view "a willful act [as] one done conscientiously and voluntarily." Nonetheless, the attorney stated that he would continue preparing for trial even though he believed the best course would be to "attempt a negotiated settlement."

Dr. Chichakly filed a "Petition to Enter a Plea of Guilty" with the trial court on September 23, 1987. The trial judge carefully instructed the defendant of his constitutional rights, including the possibility of his receiving a maximum confinement period of up to four years' and a fine not to exceed $160,000. After the defendant assured the judge that he understood his constitutional rights and was waiving the same, and that he understood the charges against him as well as the possible penalties, his attorney informed the court that Dr. Chichakly was ingesting several prescription drugs including medications for clinical depression and insomnia. The judge thereupon questioned the defendant about his habit of taking medications and, after observing his condition at this time including the defendant's intelligent responses to his questions, stated that "your memory seems to be unimpaired in that regard. And having had this little discussion, I believe that you do understand this matter as you have said." Upon the conclusion of his detailed interview, the trial judge made a finding that the guilty plea was knowingly and voluntarily made and

accepted the same subject to a showing of a factual basis, which the government thereafter demonstrated.

Three weeks after the guilty plea hearing and ten weeks before sentencing a psychiatrist who had treated Dr. Chichakly regularly 14 years earlier conducted a psychiatric evaluation of him. The psychiatrist's impression was that the appellant's mental state was the same as when he treated Dr. Chichakly before (Dr. Chichakly possessed adequate mental awareness to practice radiology at that time). The psychiatrist determined that Dr. Chichakly "was oriented for time place and person.... [and that] There was no evidence of delusions or hallucinations...." The evaluation was included in the presentence report.[4]

At sentencing the defendant acknowledged that the presentence report had been summarized for him by his lawyers.[5] One of the attorneys for the defendant submitted objections to the presentence report, and the sentencing judge engaged the defendant in an extended colloquy concerning the objections. Most of the defendant's challenges were to factual allegations in the report as they related to certain sums of money that he had allegedly spent on, or had allegedly given to, various people. At all times during the exchange the record reflects that the defendant demonstrated an acute awareness of the facts under discussion at the sentencing hearing. When the judge offered him an opportunity to address the court in mitigation of sentence, he replied, "I would like my attorneys to speak on my behalf because I am in no mental or emotional state to address the Court." The attorneys presented a lengthy argument for probation on the grounds that the defendant was needed in a public service role at a hospital in Georgia (which

was unwilling to compromise on the assets in the trust (the defendant, asserting that he had no access to the trust property, refused to disclose, or to instruct the trustee to disclose, trust information to the government).

4. We find it puzzling that neither party referred to the psychiatric evaluation of October 12, 1987, in their briefs.

5. A lawyer from Massachusetts who had represented Dr. Chichakly in various matters (including an attempt to straighten out the appellant's tax records) during the previous 18 years assisted in his defense and appeared at sentencing, along with counsel of record, to speak in the defendant's behalf. Both attorneys affirmed that they had read and understood the presentence report.

paid him $150,000 per year), the IRS was allegedly persecuting him in this prosecution, and the defendant was simply unable to organize his life or his records well enough to prepare income tax returns. The district judge sentenced Dr. Chichakly to a term of one year of imprisonment on each count, each of the first three years to be served consecutively to each other and the fourth year of imprisonment to be suspended while the defendant served a year of probation consecutive to the prior three years of confinement, and imposed a $10,000 fine on each count.

## II. ISSUES

Nearly a year after sentencing, Dr. Chichakly, now represented with other counsel, brought this federal habeas corpus action, alleging ineffective assistance of counsel and incompetence to enter a guilty plea.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

 The appellant argues that his attorney rendered ineffective assistance of counsel when he allegedly advised Chichakly to plead guilty.[6] He asserts that if his attorney had not advised him incorrectly as to his likely sentence and his chances for success at trial, he would not have pled guilty. We measure claims of ineffective assistance of counsel under the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[7] The first prong determines whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms," *id.* at 688, 104 S.Ct. at 2064–65. The appellant characterized the first prong of the test as requiring the defendant to demonstrate "that counsel's assistance was unreasonable considering all the circumstances of the case." Given the cases the appellant relies upon for his claim of ineffective assistance of counsel, it seems apparent that his actual claim is a mis-application of the theory that the guilty plea was involuntary because it was based upon alleged erroneous advice of counsel.[8] In de-

6. The appellant's self-serving affidavit is the only evidence in the record that his attorney advised him to plead guilty without a plea agreement. In a letter to Chichakly some five weeks before the entry of the guilty plea, his attorney stated, "[m]y advise [sic] is that we attempt a negotiated settlement." In a letter responding to allegations of misconduct, which was written several months after sentencing, the attorney maintained that in the absence of a plea agreement, a guilty plea appeared to be the best option. He stated that it was Chichakly's decision to reject the plea agreement offered, which would have resulted in a recommendation of a sentence of no more than one year's incarceration followed by probation.

7. The Supreme Court in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985), held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."

8. Any claim that the appellant's guilty plea was not knowing and voluntary is directly undermined by his signed statement in his Petition to Enter a Plea of Guilty:

> 4. "I have received a copy of the Indictment before being called upon to plead. I have read and discussed it with my attorney and believe and feel that I understand every accusation made against me in this case."

5. "I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment, and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counselled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case."

\* \* \* \* \* \*

8. "I understand that I am entitled to have all of my rights which may be involved in this matter explained to me, and that I have the right to have any questions I may have answered for me."

\* \* \* \* \* \*

11. "... I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment."
12. "I believe and feel that my attorney has done all that anyone could do to counsel and assist me and that I now understand the proceedings in this case against me."
13. "I know the Court will not accept a plea of 'Guilty' from anyone who claims to be innocent and, with that in mind and because I make no claim of innocence, I wish to plead 'Guilty', and respectfully request the Court to accept my plea as follows: 'Guilty' as charged to Count(s) 1 thru 4 inclusive of the Indictment."

termining whether a plea was involuntary, we consider the entire record made in a case, *Henderson v. Morgan,* 426 U.S. 637, 645–46, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976), but we measure counsel's performance with an objective standard. *See Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). Thus, for the appellant's guilty plea to have been involuntary as a result of ineffective assistance of counsel, his attorney must have given advice that falls below prevailing professional norms. Furthermore, the defendant must overcome a strong presumption that the attorney's performance was effective:

> "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;* that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). Hence, we shall evaluate whether the advice of Chichakly's attorney appeared to be sound trial strategy under *Strickland.* If the strategy appeared valid at the time given, it does not constitute ineffective assistance of counsel.

■ Dr. Chichakly raises a number of examples of allegedly faulty advice or inappropriate actions that purportedly constitute ineffective assistance of counsel. Initially, he argues that after he rejected the government's offer of a plea agreement, he instructed his attorney to prepare for trial, but instead the attorney tried to persuade him to enter an unconditional plea of guilty to all four counts of the indictment. Interestingly, Dr. Chichakly cites one section of a letter from his counsel as support for the assertion that he instructed his attorney to prepare for trial, but he disingenuously ignores other clear statements in the letter setting forth the attorney's preparations for trial. In fact, the letter (quoted below) reveals that the attorney was willing to go to trial but was fulfilling his responsibility as an attorney to advise him (the defendant) of the chances of success. Thus, the appellant misrepresents the overall message set forth in the letter when he states that his attorney tried to persuade him to plead guilty rather than preparing for trial as instructed. Secondly, the appellant contends that "defense counsel informed Defendant that the October 21, 1987 ruling by the Court had found Defendant guilty if he owed taxes and did not pay." In reality, the attorney said,

> "Referring to the judge's entry of August 21, 1987 you will note that he has an extremely simplistic view of these cases. If you had income and did not file taxes you are guilty. He does not even mention willful in his brief analysis. The word willful has been ameliorated as an essential element of this offense over the years. It primarily means that a willful act is one done conscientiously and voluntarily. The arguments against you are that even though you had personal turmoil and bad tax advice that you were aware that tax returns must be filed and they were not. Your acts were a knowing dereliction of your duty to file and were thus willful. We must show that your mental state was such that even though you may have been aware of your responsibilities to file that you were

14. "I declare that I offer my plea of 'Guilty' freely, and voluntarily and of my own accord; also that my attorney has explained to me, and I believe and feel I understand, the statements set forth in the Indictment and in this petition, and in the 'Certificate of Counsel' which is attached to this petition."

We note that the appellant has not challenged his lack of mental competency at the time of his signing this statement. Furthermore, at no time during the proceedings did the appellant, his counsel, the psychiatrist that examined him or anyone else assert that he was unable to understand the nature of the proceedings against him or the possible consequences of his guilty plea.

truly incapable of following through. *Proof of this will be most difficult, but I am willing to prepare your defense in anticipation of a trial on the willfulness question and am already doing so.*" (Emphasis added).

It is rather obvious that the thrust of this statement is that the trial judge would equate "knowing" failure to file with "willful" failure to file; thus in the attorney's opinion, the odds of prevailing on a defense of lack of willfulness were slight. Under the circumstances of this case and in view of the state of the law regarding willfulness, the attorney's advice was proper and well within the prevailing norms of professional competence.[9] Finally, while admitting that neither "the Court or the prosecution had ... made any promises as to sentence, probation, or any other benefits that the Defendant would receive if he pled guilty," Dr. Chichakly complains that his attorney gave him inaccurate advice as to the likely sentence he would receive. The appellant claims that his attorney told him that according to an IRS Special Agent "the most time Defendant would get from the Court would be 90 days" and that in counsel's opinion, "Defendant would probably receive a sentence of probation and community service." Initially, we note that the contents of the appellant's signed plea of guilty[10] petition of December 18, 1987, invalidates the very argument he makes based upon his attorney's letter:

"6. My attorney has advised me that the punishment which the law provides is as follows: [up to 4 years of imprison-

ment and up to $160,000 fine] *also that probation may or may not be granted;* that if I plead 'Guilty' to more than one offense ... the Court may order the sentences to be served consecutively one after another and the Court may order restitution.

\* \* \* \* \* \*

10. I understand also, that if I plead 'Guilty', the Court may impose the same punishment as if I had plead [sic] 'Not Guilty', had stood trial and been convicted by a jury.

11. Except for the provisions of [this] Plea Agreement, I declare that *no officer or agent of any branch of Government (Federal, State or Local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead 'Guilty'.* I hope to receive probation, but am prepared to accept any punishment permitted by law which the Court may see fit to impose." (Emphasis added).

Through this signed statement filed with the district court the appellant deliberately disclaimed the very grounds he now argues justifies reversal. Indeed, the appellant made the same assertion to the judge at the guilty plea hearing, some five days after signing the petition to enter a plea of guilty:

THE COURT: "[L]et me ask you, Doctor, *has the government or anybody else promised you anything* or has anyone threatened you in any way in order to

**9.** This Court has approved a jury instruction on willfulness that "the element of willfulness is established by proving that the defendant had knowledge of his legal obligation to file a tax return but, nevertheless voluntarily, deliberately and intentionally chose not to do what the law required." *United States v. Birkenstock,* 823 F.2d 1026, 1030 (7th Cir.1987). In light of evidence that the defendant's accountant had requested additional information a number of times in order that he might prepare the defendant's income tax returns, but the defendant refused to supply the information or to allow the accountant to file the returns without complete information, the government could easily have demonstrated that the defendant's failure to file his returns was voluntary, deliberate and intentional. No reasonable jury would con-

clude that a defendant who failed to file income tax returns for a period of 14 years did so accidentally.

**10.** We note that the Certificate of Counsel that was attached to the appellant's Petition to Enter a Plea of Guilty was signed by a second attorney that assisted in Dr. Chichakly's defense. This Massachusetts attorney (who went to Indiana to assist in the defense) had known and represented the defendant for 18 years, and it appears that he likewise participated in the approval of the plea of guilty. We find the appellant's failure to even mention this second attorney's participation in the case to be somewhat less than candid.

induce you to enter your plea this morning?"

THE DEFENDANT: "No, sir." (Emphasis added).

Given the content of the defendant's signed document setting forth his affirmative statement that *"neither the government nor anyone else promised him anything to enter a plea of guilty "* and his declaration in section 11 of the same document *"that no one has promised him a lighter sentence or leniency or probation if he would plead guilty,"* we are not persuaded that the defendant entered his plea of guilty because of misrepresentations of the sentence he would receive. In spite of the defendant's express denial to the district judge of reliance on a promise of a light sentence or probation, he now attempts to demonstrate such reliance with a deliberate and blatant misrepresentation of the letter from his attorney when stating that an IRS agent said "that the most time Defendant would get from the Court would be '90' days." The letter of March 3, 1988, he refers to, written several months after sentencing, recited:

> "The only assurances I got from the District Attorney were that he would ask for you to be incarcerated and that he would recommend no specific term of imprisonment. A special agent for the I.R.S. told me during an informal discussion that ninety (90) days in jail would be a *sufficient* jail term." (Emphasis added).

We cannot understand how a third-hand statement made to an attorney from an IRS agent, cited in a letter that states that 90 days in jail would be a "sufficient" term, could be taken to mean "that the most time Defendant would get from the Court would be '90' days." It is clear that the defendant's entire argument is based upon nothing but a series of self-serving misrepre-

sentations of the record rather than the charged misrepresentation on the part of defense counsel.

█ On the other hand, the attorney candidly acknowledged that he miscalculated the sentence the trial judge imposed: "I advised you that I thought the judge would not give you an extended sentence in light of the totality of the circumstances. I was quite, flatly, wrong! The sentence given does not fit the crime or the person." This admission, however, is of no benefit to the appellant. An attorney obviously is not able nor is he expected to predict with precision the sentence a judge will impose in order to render effective assistance of counsel unless he has control of the sentencing tribunal, and obviously there is no evidence of that here. "A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975); *see also United States v. Garcia*, 909 F.2d 1346, 1349 (9th Cir.1990); *United States v. Hollis*, 718 F.2d 277, 280–81 (8th Cir.1983). As the district court noted, the allegedly unreasonable advice was merely "counsel's impressions regarding the way in which he believed the Court viewed his case, and what one IRS Special Agent believed would be the duration of the defendant's sentence if he pleaded guilty." "[U]nder the circumstances, the challenged action 'might be considered sound ... strategy.'" *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). We refuse to mandate the impossible of defense attorneys in predicting a sentence or fine.[11]

When we determine that the appellant has failed to demonstrate error on either prong of the *Strickland* test, we need not address the other. *Strickland v. Washing-*

---

**11.** We note that the petitioner's claim alleges a "mere inaccurate prediction, standing alone, [which does] not constitute ineffective assistance." *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990) (quoting *Iaea v. Sunn,* 800 F.2d 861, 865 (9th Cir.1986)). On the other hand, when a gross miscalculation of the sentence is joined with material erroneous advice, such as the defense counsel in *Sunn,* 800 F.2d at

865, advising the defendant that "he could escape the possibility of [ten years] minimum sentenc[e] only if he pled guilty," and a guilty plea might result in probation (the defendant received a life sentence), the combination of erroneous advice of this nature may well fall below the objective standard of reasonable representation required under *Strickland.*

*ton,* 466 U.S. at 697, 104 S.Ct. at 2069 ("There is no reason for a court deciding an ineffective assistance of counsel claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."). Since the defendant's attorney gave advice that "was within the range of competence demanded of attorneys in criminal cases," *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)), thus satisfying the first prong of the *Strickland* test, it is immaterial whether that advice may have failed the other prong by changing the outcome of the case.

▬ The appellant's challenge to the effectiveness of his attorney is, in effect, a back-door attack on his sentence.[12] He argues that he entered his guilty plea expecting 90 days of incarceration at most, and perhaps merely probation and a requirement of community service. Indeed, Dr. Chichakly requested probation in his Petition to Enter a Plea of Guilty ("I hope to receive probation ... I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading 'Guilty' I have saved the Government and the Court the expense and inconvenience of a trial.") and his attorneys argued for probation at the sentencing hearing. Nonetheless, after a thorough consideration of the crime and the defendant's circumstances as well as the presentence report (the judge specifically excluded consideration of those items in the presentence report that the defendant challenged), the court imposed a sentence of confinement and fine that the appellant considers excessive. Our review of the record persuades us that the Probation Officer's Assessment in the presentence report accurately summarizes the situation facing the judge at the time of sentencing:

> "The defendant, age 67, has pled guilty without the benefit of a Plea Agreement to 4 counts of Failure to File a Tax Return for the tax years 1981 through 1984. His total income for this time period exceeded $700,000.00 and an IRS Jeopardy Assessment was recently filed in the amount of $584,000.00. The defendant has not filed a federal tax return since the 1972 tax year. Dr. Chichakly has made a mockery of the tax statutes for 14 years and continually tries to justify his illegal activities by blaming his accountants, ex-wives, employees and finally IRS. The defendant possesses no deep felt contrition and his current posture before the court can best be described as situational remorse. This conclusion is supported by the defendant's refusal to release any information regarding a foreign trust allegedly established for his four (4) children...."

The sentencing judge properly considered all of the facts, circumstances and recommendations and rejected the defendant's request for a sentence of probation and community service. The appellant is without a legitimate basis for complaining about his sentence.

## IV. INCOMPETENCE TO PLEAD GUILTY

▬ Dr. Chichakly in another attempt to set aside the plea of guilty contends that he was incompetent to enter a guilty plea because of the medications he was ingesting for depression and insomnia. He asserts that his behavior and conduct at the guilty plea and sentencing proceedings should have put the court on notice of his incompetency, and thus the judge was obligated to hold a competency hearing. The appellant claims that when the judge questioned him about his medications during the guilty-plea proceedings, he "started rambling about his past depressions. [When his counsel cut-off Defendant's rambling and told him to answer the Court's question[,]] Defendant again talked about how his past problems led to his being depressed."[13]

---

12. We note that the appellant waived any argument he might otherwise have raised regarding the severity of his sentence when he signed the guilty plea petition, which acknowledged that he understood he could receive up to four years' imprisonment.

13. The following conversation between the defendant and the judge demonstrates no defect in

Further, the appellant argues that he "made the District Court aware that he was having mental and emotional problems" twice during the sentencing proceeding. He somehow attempts to support this unconvincing theory of mental and emotional problems with the fact that his attorneys summarized the presentence report for him, as opposed to reading it for himself, as well as with his statement to the court that "I would like my attorneys to speak on my behalf because I am in no mental or emotional state to address the Court." Upon considering these assertions in the appellant's habeas motion, the district judge said,

"The Court carefully observed the defendant during his guilty plea hearing and found that he did not exhibit any outward manifestation which required the Court to conduct a competency hearing. The defendant indicated that he understood the charges contained in the Indictment as well as the possible penalties. After describing the hypertension medications which the defendant was taking, the defendant's counsel stated that:

'the influence of drugs that [the defendant] is taking is not such that it effects [sic] his ability to think or understand the nature of the charges against him.

'I will make th[e] representation to the Court as well and I believe my client is fully cognizant of the charges being brought and what he is doing at this time.'

"Such an affirmative representation, made by an officer of this Court, was (and is) entitled to special consideration and will not be ignored simply because a litigant alleging his own incompetence

would find his argument strengthened had the statement not been made.

"In light of the compelling evidence that the defendant was competent, the defendant's assertions regarding the *possible* effects of his different hypertension medications simply do not convince the Court that its earlier judgment with respect to his competence was incorrect. Similarly, neither the fact that the defendant had his counsel summarize his presentence investigation report to him, nor the fact that the defendant chose not to personally address the Court during his sentencing hearing (the defendant stating that he would prefer his attorneys address the court because he was 'in no mental or emotional state to do so'), compels a different conclusion. Neither event is so unusual as to draw into question the defendant's competence."

(Emphasis original). We agree. There is certainly no need to conduct a competency hearing when there is no evidence before the Court of incompetency and when the defense attorney failed to request one and neither the prosecuting attorney nor the judge saw a need for one. From our review of this record, we are confident that the respective able trial attorneys, as well as the presiding judge, would have exercised their duty to raise the issue had any doubt surfaced as to Dr. Chichakly's competence during the proceedings. *See United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 499 (7th Cir.1982). "We emphasize that the trial court is always in the best position to [determine the need for a competency hearing just as it is in the best position to] review, weigh and determine the credibility of the witnesses and resolve

the defendant's ability to understand his circumstances.

"THE COURT: How long have you been taking these anti-depression drugs?

THE DEFENDANT: Sir, I started them way back, but on and off. There is depression, but I could handle it when I am married. I have a family life.

DEFENDANT'S ATTORNEY: Answer his question as to how long you have been taking it.

THE DEFENDANT: But when I am exposed to shocks like this one and divorces and all that stuff, I start taking it. I have been taking the

anti-depressant drugs I would say for the last nine or ten months, somewhere around there.

THE COURT: Are those self-prescribed, or do you have a psychiatrist or somebody like that who prescribes them for you?

THE DEFENDANT: Sir, they were prescribed by a psychiatrist when I went through my divorce in 1982. And I took them for a while, quite a while in fact. I was on Elavil, but it affected me very badly. So we shifted to Deseril. The Xanax was prescribed by my psychiatrist. And the Halcion also was a short acting so-called sleeping pill."

any inconsistencies in their testimony." *Quadrini v. Clusen*, 864 F.2d 577, 583 (7th Cir.1989). "No court can ascertain for a certainty whether defendant truly comprehended the nature and purpose of the proceedings against him. Procedural due process requires only that certain necessary procedural safeguards be provided to the defendant to ensure a fair evaluation of his competency when a bona fide doubt is raised." *United States ex rel. Rivers v. Franzen*, 692 F.2d at 500.

It is within the discretion of the trial judge to determine whether there should be a competency hearing, and "the district court's findings of fact [relating to the defendant's competence] will not be disturbed unless clearly erroneous." *United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). 18 U.S.C. § 4241(a) instructs the trial judge to

> "order [a competency] hearing on its own motion, *if there is reasonable cause to believe* that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is *unable to understand the nature and consequences of the proceeding against him* or to assist properly in his defense." (Emphasis added).

"[T]he failure to grant such a hearing in the face of sufficient evidence to establish reasonable cause to believe that a defendant is mentally incompetent is a violation of due process." *United States v. Garrett*, 903 F.2d at 1116 (citing *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966)). There must be, however, evidence of incompetence presented to the judge or some conduct of the defendant implying incompetence in order to "establish reasonable cause."

> "A habeas petitioner who contends that he was entitled to a competency hearing must show that there were matters known to the trial court that raised at that time a 'real, substantial, and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel'. *Bruce v. Estelle*, 5th Cir.1973, 483 F.2d 1031,

1043. The test is an objective one. The duty to hold a competency hearing turns not on what the trial judge in fact had in mind, but whether the facts before him were such as to create a reasonable doubt as to the defendant's competency. *Grissom v. Wainwright,* 5th Cir.1974, 494 F.2d 30."

*Pedrero v. Wainwright,* 590 F.2d 1383, 1387–88 (5th Cir.1979). We do not believe Dr. Chichakly's behavior before the trial judge should have raised any suspicion as to the appellant's competency; there were certainly no facts before the trial judge capable of raising a "real, substantial, and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel." We refuse to criticize the trial judge for failing to hold a competency hearing, for " 'one cannot fault a trial court judge for failing to determine a question that he has no reason to believe is an issue.' " *United States ex rel. Rivers v. Franzen*, 692 F.2d at 497 (quoting *Davis v. Alabama,* 545 F.2d 460, 464 (5th Cir.1977)). Furthermore, there is a presumption that a criminal defendant is mentally competent to stand trial. *See* 18 U.S.C. § 17(b) (the burden of proving mental incompetence is on the defendant). "The test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *United States v. Garrett,* 903 F.2d at 1116 (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)); *see United States ex rel. Rivers v. Franzen*, 692 F.2d at 500 ("the failure of defendant or his counsel to raise the competency issue is persuasive evidence that there was no bona fide doubt as to [the defendant's] competency during the trial."). At the guilty plea hearing the defendant gave intelligent, responsive answers to each of the myriad of questions the court asked, and he further informed the court that he was fully aware of the proceedings against him as well as the possible penalties that might be

imposed.[14] The appellant's attorney then informed the court that Dr. Chichakly was taking medications for hypertension that "are basically to reduce his high blood pressure and have no involvement with his central nervous system *or anything of the like that would affect his ability to converse and know what he is charged with.*" (Emphasis added). The attorney noted that the defendant was also taking medications for clinical depression and insomnia but stated that his ability to understand his circumstances was unimpaired:

"As an officer of this Court, I have conversed with my client today. I have discussed with him his case. And his other attorney ... was satisfied that [Dr. Chichakly] was aware of all the charges; and the influence of the drugs that he is taking is not such that it affects his ability to think or understand the nature of the charges against him.

"I will make that representation to the Court as well that I believe my client is fully cognizant of the charges being brought and what he is doing at this time."

After questioning Dr. Chichakly carefully regarding the history of his medications, the judge concluded, *"[w]ell, your memory seems to be unimpaired in that regard. And having had this little discussion, I believe that you do understand this matter as you have said."* [15] (Emphasis added). Given the intelligent responses the defendant made in his discussions with the court, and because there was no evidence of incompetence before the court, the district judge was without "reasonable cause to believe that the defendant [was] suffering from a mental disease or defect rendering him mentally incompetent to ... understand the nature and consequences of the proceedings against him." Furthermore, a trial judge is certainly entitled to rely upon representations from an attorney that his client is competent: "Counsel for a defendant, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the pro-

---

**14.** "THE COURT: A plea of guilty on all counts could result, however, in sentences of imprisonment being imposed to be served consecutively, that is, one after another; so that the total exposure would be four years.

Also fines could be imposed. And these vary with the year in question. As to Count One, the possible fine could be $10,000; Counts Two and Three could be $25,000; Count Four 100,000 [sic], representing changes in tax laws.... So that in the aggregate, we are talking about a maximum fine totaling $160,000. Last, and also least, there is a special assessment of $25 per count.

\* \* \* \* \* \*

Do you believe that you understand the charges contained in these four counts of the indictment, Dr. Chichakly?
THE DEFENDANT: Yes, sir.
THE COURT: And the possible penalties?
THE DEFENDANT: Yes, sir.
THE COURT: How do you plead to Count One?
THE DEFENDANT: Guilty.
THE COURT: And the other counts?
THE DEFENDANT: Guilty.
THE COURT: All right. You are what, 65 years old at this time?
THE DEFENDANT: Sixty-seven, sir.
[DEFENDANT'S ATTORNEY]: Judge, I might explain for the Court my client was born in Syria. The records from Syria indicate an age of 67. And the records that were created by the government here in the United States indicate 65...."

THE COURT: ... You are a medical doctor. You have a license to practice in the State of Indiana?
THE DEFENDANT: Yes, sir.
THE COURT: Well then, I am sure that you have sufficient intelligence to understand this matter as you have stated unless at this time you are under treatment for some mental disease or under the influence of alcohol or drugs...."

We note that the defendant's response in correcting the judge as to his age is additional evidence that he was fully aware of the proceedings.

**15.** The trial judge likewise verified that the plea was voluntary:

"THE COURT: And you say there has been no representation of any kind made to the defendant by the government; is that right?
[DEFENDANT'S ATTORNEY]: Your Honor, there were plea negotiations; but the plea offer that was made by the government was rejected. And the defendant elected to come in on his own and plead guilty.
THE COURT: So there is no—well, let me ask you, Doctor, has the government or anybody else promised you anything or has anyone threatened you in any way in order to induce you to enter your plea this morning?
THE DEFENDANT: No, sir.
THE COURT: All right. Well, then, I believe your plea is voluntary; and I accept it subject to the showing as to the factual basis for the plea."

ceedings and assist counsel with his defense." *United States ex rel. Rivers v. Franzen*, 692 F.2d at 500. In view of the complete lack of evidence of mental incompetence, the absence of a perception on the part of the judge, defense counsel, or the prosecutor, that the defendant was mentally incompetent to proceed, and the defense attorney's representation that his client was competent, the judge's questioning of the defendant at the guilty plea hearing was adequate to determine his competence. Moreover, "failure to conduct a full competency hearing is not a ground for reversal when the defendant appears competent...." [16] *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987). The appellant appeared competent to understand the nature of the proceedings against him and his available defenses throughout the prosecution period: Dr. Chichakly asserted that he had a thorough understanding of the indictment, his rights and his defenses in his Petition to Enter a Plea of Guilty; during the guilty plea proceedings Dr. Chichakly demonstrated an ability to understand the nature of the proceedings as well as an ability to recall and recite the history of his medications; the psychiatrist found him competent to understand his circumstances; Dr. Chichakly was gainfully employed at hospitals as a practicing radiologist up to the time of sentencing; and at the sentencing proceedings he discussed and challenged certain statements in the presentence report with the judge in detail. Since these circumstances are contemporaneous and part of the actual sentencing procedure, they serve to provide clear evidence of mental competency rather than mental instability, thus the appellant's subsequent self-serving allegations of incompetence are without merit. The argument is an unsubstantiated after thought, and we reject it. After a review of the record, we are convinced that the finding of the trial judge that Dr. Chichakly was competent to plead guilty was not clearly erroneous.[17]

## V. CONCLUSION

Dr. Chichakly has failed to either sustain his burden of demonstrating that his attorney's advice fell below that which is expected of attorneys in criminal proceedings or to establish that the trial court was clearly erroneous in finding that he was competent to enter into a plea of guilty. We are convinced from the proceedings that the defendant has no respect for the tax laws, nor does he exhibit respect for the American judicial system (whose goal is to achieve justice through ascertaining the truth of the matter before it) as demonstrated through numerous misrepresentations of fact on appeal. It is shocking that his attorney, a representative of the court, joins him in the misrepresentations. Because his appeal is without merit, the judgment of the district court dismissing the appellant's habeas corpus motion is

AFFIRMED.

---

**16.** The standard for competency to stand trial and to plead guilty are the same. *United States ex rel. Heral v. Franzen*, 667 F.2d 633, 638 (7th Cir.1981).

**17.** The appellant's allegation that he attempted suicide in the courtroom following sentencing and had to be hospitalized is unpersuasive, since he provides no affidavit of a treating physician, no records of admission to the hospital, nor even the name of the hospital. Furthermore, this appears to be an argument raised for the first time on appeal, for the district court did not address it. Thus, it is waived. *Colon v. Schneider*, 899 F.2d 660, 670 (7th Cir.1990) ("this court has repeatedly stated that arguments raised for the first time on appeal are waived.").