966 F.2d 1456
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lester HULIN, Petitioner/Appellant,
v.
Larry MIZELL, Respondent/Appellee.
 No. 90-1587.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 8, 1992.*
Decided June 10, 1992.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 One night in 1983, Lester Hulin entered the Silver Dollar Tavern in Peoria, Illinois, pulled out a gun, and shot and killed his ex-wife, who was a bartender at the tavern and who also happened to be a witness against him in a pending criminal prosecution. Under Illinois law, a defendant who murders a witness in a criminal prosecution against him is eligible for the death penalty. Ill.Rev.Stat. ch. 38, para. 9-1(b)(8). Instead of going to trial, Mr. Hulin pleaded guilty but mentally ill to murdering his ex-wife and was sentenced to 22 years' imprisonment. Mr. Hulin neither directly appealed his conviction nor moved to withdraw his guilty plea. Instead, he filed a motion in the Illinois trial court for post-conviction relief alleging that his counsel's ineffective representation rendered his guilty plea involuntary. Specifically, Mr. Hulin contended that counsel was ineffective because he failed to: (1) fully investigate and raise the defense of insanity and (2) investigate Mr. Hulin's fitness to stand trial. The trial court denied Mr. Hulin's petition on the merits, the appellate court affirmed the denial, and the Illinois Supreme Court denied leave to appeal.
 
 
 2
 Mr. Hulin then sought collateral relief in the district court under 28 U.S.C. § 2254, alleging the same grounds raised in his state post-conviction petition. The district court held an evidentiary hearing in order to explore the merits of Mr. Hulin's ineffective assistance of counsel claims. After listening to the conflicting testimonies of Mr. Hulin and his former attorney, Kim Kelley[1], the district court denied the petition, reasoning that Kelley's decision to plead Hulin guilty, rather than going to trial and raising the defense of insanity, was a reasonable strategic decision. Additionally, the district court concluded that Kelley had thoroughly investigated Mr. Hulin's mental capacity, and, in light of what that investigation revealed, his failure to request a competency hearing was not objectively unreasonable. Mr. Hulin now appeals the denial of his petition. We affirm.
 
 
 3
 Mr. Hulin faces a difficult task in establishing an ineffective assistance of counsel claim. In order to prevail, Mr. Hulin must show that counsel's representation was objectively unreasonable, Strickland v. Washington, 466 U.S. 668, 694 (1984), and, because he pleaded guilty, he must also demonstrate that a reasonable probability exists that, but for counsel's mistakes, he "would not have pleaded guilty and would have insisted on going to trial.' " Liss v. United States, 915 F.2d 287, 291 (7th Cir.1990) (citation omitted). Moreover, "[j]udicial review of an attorney's performance is deferential, and there is a strong presumption that representation was competent." Pittman v. Pontiac Correctional Center, No. 90-2996, slip op. at 6 (7th Cir. April 6, 1992).
 
 
 4
 Mr. Hulin contends that Kelley's failure to fully investigate and present a potential insanity defense fell below an objective standard of reasonableness.[2] This contention is without merit. First, this is not a case where defense counsel completely failed to investigate a possible defense. See Brewer v. Aiken, 935 F.2d 850 (7th Cir.1990). Rather, the record reveals that Kelley specifically retained Dr. Donald Legan, a registered clinical psychologist, to evaluate Mr. Hulin in order to determine the availability of the insanity defense.
 
 
 5
 After Dr. Legan conducted an extensive, three-hour psychological examination of Mr. Hulin, he met with Kelley to discuss his conclusions. While Dr. Legan indicated that Mr. Hulin suffered from serious thought disorders and paranoid thinking consistent with schizophrenia, he also told Kelley that he would be unable to testify in support of an insanity defense because the results of his examination did not reveal that Mr. Hulin was unable to act within the confines of the law or that he lacked the capacity to understand that his conduct was unlawful. These are the precise elements of a successful insanity defense in Illinois. Ill.Rev.Stat. ch. 38, para. 6-2(a). Thus, Kelley's decision to plead Mr. Hulin guilty but mentally ill, rather than proceed to trial and risk imposition of the death penalty on an ill-fated insanity defense, was a reasonable strategic decision which is not subject to this court's "second guessing." Pittman, No. 90-2996, slip op at 6. See also Coogan v. McCaughtry, No. 91-1869, slip op. at 10-11 (7th Cir. April 1, 1991) (in light of adverse case law, counsel's decision not to pursue non-responsibility defense was a reasonable trial strategy).[3]
 
 
 6
 Mr. Hulin's next contention--that his attorney failed to investigate his competency to plead guilty--is not supported by the record. Mr. Hulin testified that he only met with Kelley a few times and that they never discussed the case in detail. However, Kelley's evidentiary hearing testimony sharply conflicted with Mr. Hulin's account. The district court weighed the credibility of Kelley against that of Mr. Hulin and accepted Kelley's version of the facts. Absent extraordinary circumstances, none of which are present here, we do not disturb the district court's credibility determination. United States v. Cardona-Rivera, 904 F.2d 1149, 1152-53 (7th Cir.1990). See also United States v. Ramos, 932 F.2d 611, 619 (7th Cir.1991) ("fact-finder's choice between two permissible views of the evidence cannot be clearly erroneous").
 
 
 7
 Kelley testified that he met with Mr. Hulin on ten separate occasions, during which they discussed the charges against him, discovery, potential witnesses, possible defenses, and the best way to proceed in the case. Kelley further stated that Mr. Hulin fully cooperated in his defense and understood the proceedings against him. See Chichakly v. United States, 926 F.2d 624, 633 (7th Cir.1991) (the test for competency is whether the defendant is able to understand the nature of the proceedings against him and cooperate with his attorney in his own defense).[4] Kelley also met with Mr. Hulin's brother in order to further evaluate Mr. Hulin's competency to plead guilty. Based on his own observations of Mr. Hulin and his conversations with his brother, Kelley concluded that Mr. Hulin was legally fit to enter a guilty plea. As Mr. Hulin's counsel, he was in the best position to make this decision. United States v. Caicedo, 937 F.2d 1227, 1233 (7th Cir.1991). See also Chichakly, 926 F.2d at 633 (" 'Counsel for the defendant, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings and assist counsel with his defense' ") (citation omitted). Furthermore, the transcript of the plea hearing reveals that Mr. Hulin was coherent and able to understand the nature of the charges against him. See id. at 635 (reversal for failure to hold competency hearing not required when appellant, among other things, appeared able to understand the guilty plea proceedings). As the district court concluded, Kelley fully investigated Mr. Hulin's competence and reasonably determined that his client was competent to plead guilty. Under these circumstances, his counsel's failure to raise the issue of competency before the trial court did not fall below objective standards of reasonableness.
 
 
 8
 Mr. Hulin makes one last attempt to set aside his guilty plea. He contends that Kelley misrepresented his (Mr. Hulin's) competency to the trial court at the plea hearing. In support of this contention, he points out that the statements in Dr. Legan's report, indicating that his mental condition strongly suggested an inability to cooperate in his own defense and understand the proceedings against him, are inconsistent with Kelley's remark to the trial court that "Dr. Legan did say he felt he understands the proceedings against him and cooperated with counsel." Kelley explained this apparent inconsistency at the evidentiary hearing. He testified that Mr. Hulin's conduct during their meetings contradicted Dr. Legan's initial findings that Mr. Hulin was unable to cooperate in his defense or understand the proceedings against him. Kelley stated that he met with Dr. Legan several times after the medical report was issued to discuss Mr. Hulin's conduct and by the time that the plea hearing was held, Dr. Legan had modified his initial views concerning Mr. Hulin's fitness. The district court concluded that, although Kelley might have made a more complete record, his statements at the plea hearing were accurate and made in good faith. Once again, no extraordinary circumstances exist which require this court to overturn the district court's credibility determination. Cardona-Rivera, 904 F.2d at 1152-53.[5] Moreover, as stated above, Kelley had thoroughly investigated Mr. Hulin's mental competence prior to the plea hearing and was satisfied that his client was able to cooperate and understand the proceedings against him.
 
 
 9
 Mr. Hulin has failed to sustain his burden of establishing that his attorney's performance fell below an objective standard of reasonableness. Consequently, we do not need to determine whether counsel's decisions not to proceed to trial on the insanity defense or to raise the issue of mental incompetency prejudiced Mr. Hulin. Pittman, No. 90-2996, slip op. at 7. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Mr. Hulin was represented by appointed counsel during the evidentiary hearing
 
 
 [2]
 To the extent that Mr. Hulin argues that counsel's failure to investigate and raise the defense of voluntary intoxication constituted ineffective assistance of counsel, we note that this argument is waived by his failure to raise it in the district court. United States v. Pryor, No. 90-2405, slip op. at 6 (7th Cir. March 12, 1992). Furthermore, Mr. Hulin advances no argument or citation to any case law with respect to this claim. In the Matter of Establishment of Microcosm, 951 F.2d 121, 124 (7th Cir.1991)
 
 
 [3]
 Mr. Hulin further contends that Kelley's investigation was unconstitutionally incomplete because he did not follow up Legan's report by interviewing witnesses to the shooting. However, Mr. Hulin does not identify these witnesses nor does he reveal what information they could have provided. United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir.1991)
 
 
 [4]
 The test for competency to stand trial and competency to plead guilty are identical. Chichakly, 926 F.2d at 635
 
 
 [5]
 The parties stipulated that if Dr. Legan were to testify at the evidentiary hearing he would have testified that: (1) he did not recall any further conversations with Kelley and (2) it was his normal practice to issue a second report in the event that he modified his conclusions about a patient. We agree with the district court that this stipulation does not contradict Kelley's testimony. Dr. Legan did not stipulate that he never had any further conversations with Kelley, but only that he did not recall having any further conversations with Kelley. Furthermore, Dr. Legan did not stipulate that he did not modify his views regarding Mr. Hulin's competency--he stipulated only that it was his usual practice to write a second report in such a situation