991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Walter MONTAGUE, Petitioner/Appellant,
v.
Alethea T. CAMP, Warden, and Neil F. Hartigan, Respondents/Appellees.
 No. 91-2289.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 30, 1993.*
Decided April 12, 1993.
 
 Before BAUER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Walter Montague appeals from the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Montague was convicted of murder in 1985 and sentenced to twenty-five years imprisonment. Montague's conviction was affirmed by the Illinois Court of Appeals, and the Illinois Supreme Court denied leave to appeal.
 
 
 2
 The fatal confrontation between Montague and Robert E. Green, Montague's victim, occurred at a bar in Springfield, Illinois. Green was sitting with Barbara Chavis, Montague's ex-wife, at a table in the bar. Throughout the evening, Montague repeatedly stopped by the table where Green and Chavis were sitting. Chavis testified at trial that during Montague's final visit to the table, he accused Green of preventing him from talking to Chavis. Chavis stated that Montague then proceeded to fire a gun three times at Green.
 
 
 3
 Montague testified that when he approached the table for the final time, Green invited him to sit down. After Montague conversed with Chavis for a few moments, Green allegedly slapped the table and told Montague that he had "better leave the table." Montague stated that he took Green's advice, and began to leave. While getting up from the table, he testified that he saw Chavis reach in Green's direction and he noticed Green reach for his pocket. Montague testified that he saw a shiny object in Green's hand, and believed it to be a gun. Montague responded by firing his own .44 Magnum revolver three times. Two of the shots struck Green. Montague conceded on cross-examination that he fired the third shot while Green was felled by the first two shots.
 
 
 4
 Chavis testified that Green remained seated and made no threatening remarks or motions prior to Montague's shooting spree. The bar owner testified that he witnessed the second and third shots, and saw Green sitting with his hands on the table. Both the owner and a bartender testified that Montague made incriminating statements after the shooting, which Montague later denied. When two police officers arrested Montague at his home, the defendant made several additional incriminating statements and turned over the murder weapon.
 
 
 5
 At trial, defense counsel argued that Montague shot Green in self-defense. The defense presented Detective Tommy Todd, an officer who examined the shooting scene and received some clothing worn by Green at the shooting scene. Todd testified that an emergency room nurse gave him additional clothing and a pocketknife, which was placed in a property locker at the police department. Todd stated that the pocketknife had a three-inch blade and that he found it in the front pocket of a pair of pants. Defense counsel's requests for the pocketknife for use at trial were futile because it was no longer with the other property inventoried by Todd and could not be found.
 
 
 6
 During trial and over the State's objection, defense counsel successfully moved for a short continuance to subpoena the nurse who removed Green's clothing. Defense counsel wished to obtain her testimony in the hope that she could establish that the knife had been removed from Green's clothing. The witness was never produced, however. Nothing in the record indicates whether the nurse did not testify because she was unavailable or because her testimony would have been unhelpful.
 
 
 7
 More than seven months prior to trial, the State had complied with the trial court's discovery order by informing defense counsel that it would make all of its proposed exhibits available for inspection. Defense counsel also received Detective Todd's police report, which included an inventory of Green's personal belongings. One of the items listed was a small pocketknife with a three-inch open blade that was found in Green's pants pocket. Two months after the State's disclosure, defense counsel filed a motion requesting seventy-one discoverable items, including reports, records, and guns or knives. The court never ruled on this motion. Defense counsel did not specifically request the knife mentioned in Todd's report until the first day of Montague's trial.
 
 
 8
 After exhausting his state remedies, Montague filed his petition for a writ of habeas corpus in the district court alleging that the State ignored its obligation to turn over exculpatory evidence to him. Montague also alleged that he was denied effective assistance of counsel because trial counsel failed to establish a chain of custody for the pocketknife and he did not adequately question Todd concerning the pocketknife.
 
 I.
 
 9
 Montague alleges that the State violated the principles of Brady v. Maryland, 373 U.S. 83, 87 (1963), when it failed to produce the pocketknife that was allegedly found in his victim's pants pocket. Brady requires prosecutors to provide information to the defense only if the information is both favorable to the accused and material to either guilt or punishment. Id. Evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 674-75, 682 (1985) (plurality opinion). Failure to preserve the pocketknife is a denial of due process of law only if the petitioner shows that the police acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Montague has failed to come forward with any evidence suggesting that the disappearance of the pocketknife was attributable to bad faith on the part of the police or prosecutor.
 
 
 10
 Furthermore, had the pocketknife been produced, it is highly unlikely that the outcome of the trial would have been different. Detective Todd testified that the knife was inventoried with evidence from the killing. This testimony supported Montague's own testimony that Green had a knife. Montague admitted on cross-examination that his last shot was fired when Green was felled by his earlier shots. Montague also testified that moments before he shot his victim, Green had jokingly invited him to sit with him and Chavis. The use of the knife as evidence would not cure the other hurdles Montague had to clear if his self-defense argument was to persuade the jury. The testimony of all the other witnesses at trial contradicted Montague's self-defense argument, and two of these witnesses testified that Green was seated defenseless with his hands on the top of the table when Montague began his assault. In sum, use of the pocketknife as evidence would not have created a reasonable probability that the jury would have found Montague's killing of Green to be justified.
 
 II.
 
 11
 Montague contends that his attorney's performance at trial was constitutionally defective because he failed to present chain-of-custody evidence and thoroughly question Detective Todd concerning Green's possession of a knife. To prevail on his claim of ineffectiveness of trial counsel, Montague must establish that his attorney committed serious errors that fell "below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that counsel's performance prejudiced the defendant such that it rendered the proceeding fundamentally unfair or made the result unreliable. Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993); Strickland, 466 U.S. at 687. Failure to satisfy either the performance or prejudice prong of the Strickland test is fatal to an ineffectiveness claim. Chichakly v. United States, 926 F.2d 624, 630 (7th Cir.1991).
 
 
 12
 The record does not reveal that Detective Todd had firsthand knowledge that the clothing and knife were Green's or that the pocketknife was found in Green's clothing. Todd merely testified that on the night of the shooting a nurse had given him a pair of pants with a pocketknife, which he placed in a property locker. Montague's testimony that he observed Green handling a shiny object prior to the shooting supported the inference that the pocketknife was indeed Green's. Todd's police report, which was not entered into evidence, stated that the knife was found in Green's pants in an open position. The record does not reveal why the nurse who provided the officer with these items was not called as a witness, although Montague's affidavit suggests that she was unavailable.
 
 
 13
 The record suggests that defense counsel's failure to elicit more specific testimony from Todd concerning the provenance of the knife was grounded in Todd's own lack of specific knowledge of its origin, and not in defense counsel's incompetence. Todd did testify that the knife was found in Green's pants pocket and that its blade was approximately three inches long. The only fact in the report not mentioned during Todd's testimony was that the blade was in an open position. While this might have been incrementally useful testimony, it would not likely overcome the overwhelming evidence of Montague's guilt. Montague's testimony that Green possessed the pocketknife would have been further corroborated had the nurse been available to testify, presuming that she would have given helpful testimony. In Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir.1987), cert. denied, 111 S.Ct. 122 (1990), we held that a petitioner is obligated to present the testimony of potential witnesses to the district court considering the petition or explain their absence and "demonstrate, with some precision, the content of the testimony they would have given at trial." Montague has failed to comply with his obligation under Cross, instead relying on conclusory allegations that fall short of showing that his attorney's conduct prejudiced the conduct of the trial. Because even Montague could not testify that Green held the pocketknife in his hand or ever threatened him, and every other eyewitness testified that Green was only a helpless victim, we find that trial counsel rendered competent assistance and that counsel's performance did not prejudice Montague such that it rendered the proceeding fundamentally unfair or made the result unreliable.
 
 
 14
 The district court's judgment is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs