UNITED STATES of America,
Plaintiff–Appellee,

v.

Byron DuBois COLLINS,
Defendant–Appellant.

No. 90–2485.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1991.

Decided Nov. 26, 1991.

Barry R. Elden, Jerome N. Krulewitch (argued), Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Thomas H. Piper (argued) White Hall, Ill., for defendant-appellant.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

The single issue presented by this appeal is whether the district court erred in failing to hold a competency hearing pursuant to 18 U.S.C. § 4241(a) (1988) before accepting Defendant Collins's plea of guilty to bank robbery. Because we determine the district court did not have reasonable cause to believe the defendant was incompetent, it was not required to hold a hearing. We, therefore, affirm.

I.

On February 13, 1989, federal agents arrested Byron DuBois Collins, pursuant to a duly executed warrant, for the robbery of the Illiana Federal Credit Union in Calumet City, Illinois, on January 31, 1989. Collins made his initial appearance before Magistrate Joan B. Gottschall the following day. At that appearance, the government moved to detain Collins as a flight risk, and to have him examined to determine his mental competency to stand trial. Defendant did not object to either motion; as a consequence, the magistrate granted both.

Between February 23, 1989, and March 8, 1989, Marjorie J. Muzyczka, Ph.D., conducted a psychological evaluation of Collins. She concluded he was competent to stand trial. On defendant's motion, the magistrate ordered a second psychiatric examination, which was conducted by Mark Amdur, M.D., on March 27 and 28, 1989. Again, on defendant's motion, the magistrate ordered a third psychiatric examination, this one conducted by Orest E. Wasyliw, Ph.D., on April 5 and May 3, 1989. Drs. Amdur and Wasyliw both concluded defendant suffered from schizophrenia and was not competent to stand trial.

At a hearing before the magistrate on May 26, 1989, the Assistant U.S. Attorney stated that the Amdur/Wasyliw reports provided sufficient grounds for a finding that the defendant was not competent, and should be remanded to the custody of the Attorney General for further observation under 18 U.S.C. § 4241(d) (1988). In response to the magistrate's question, defense counsel indicated it was his position that Collins was not competent to stand trial. In view of the prosecutor's and defense attorney's statements, and two psychiatric reports concluding that Collins was not competent, Magistrate Gottschall determined that a competency hearing was unnecessary. She found, by a preponderance of the evidence, that Collins was not competent to stand trial, and remanded him to the custody of the Attorney General.

Collins was admitted to the Mental Health Division of the Federal Correctional Institution at Butner, North Carolina, on July 24, 1989, where he remained until October 9, 1989. During his stay at Butner, Collins was examined by Kevin H. McBride, Ph.D., a clinical psychologist, Walter L. Cassidy, M.D., a psychiatrist, evaluated by the Forensic Team, and observed daily by various other members of the Mental Health and Correctional staff. In their forensic evaluation, dated September 30, 1989, Drs. McBride and Cassidy stated they found Collins currently competent to stand trial. As a result, on October 13, 1989, Butner Warden J.T. Hadden executed a Certificate of Restoration of Competency to Stand Trial.

The Special May 1987 Grand Jury indicted Collins on October 17, 1989. The indictment contained two counts: one for violation of 18 U.S.C. §§ 2113(a) and (d) (1988), charging that he robbed the Illiana Federal Credit Union on January 31, 1989, and in doing so, assaulted and jeopardized the life of a bank teller by use of a dangerous weapon, and a second count for violation of 18 U.S.C. § 924(c) (1988), charging that he used and carried a firearm in the course of the robbery. Collins was arraigned before Judge William T. Hart on October 20,

1989.[1]  Because Collins stood mute, Judge Hart entered a plea of not guilty on his behalf.  His attorney moved for another psychiatric examination, and for a competency hearing.  Judge Hart directed defense counsel to file a written motion requesting further examination, and set a competency hearing for November 20, 1989.

On November 6, 1989, Collins withdrew his motion for a competency hearing.  Consequently, Judge Hart entered a minute order canceling the hearing.  On November 15, Collins filed a motion for psychiatric evaluation to determine the appropriateness of raising the defense of insanity at the time of the robbery, which Judge Hart granted.  Collins filed a second motion on November 22, 1989, seeking an examination relating to an insanity defense.  Judge Hart entered an order granting that motion also, but for some reason not made clear in the record, Collins was not evaluated pursuant to that order.  Defense counsel sought, and obtained, another order that defendant be examined on December 14, 1989.  But because Collins was on codeine for a hand injury on that date, which would interfere with his psychiatric evaluation, he was not examined.  Ultimately, the second examination regarding the appropriateness of an insanity defense commenced on February 1, and concluded sometime in early March, 1990.  At a status hearing on March 15, 1990, defense counsel notified the court and the prosecution of his intention to file notice of insanity defense.  The government then moved for a psychiatric examination of Collins, at Butner, to determine whether he was sane at the time of the robbery.  Judge Hart granted this motion.

Fifteen days later, on March 30, 1990, at a change of plea hearing, the defense filed a waiver of insanity defense and an executed plea agreement pleading guilty to count one of the indictment.  Collins's competency to plead guilty was among the issues Judge Hart considered at that hearing.  He asked Collins if he understood that the doctors who examined him found him to be competent.  Collins responded that he did understand.  He asked the prosecutor whether, in her opinion, defendant was competent, to which she responded yes.  Judge Hart then asked for the basis of her opinion, which she offered.  Finally, he asked defense counsel if, in his opinion, Collins was competent.  Counsel similarly responded yes, and in response to the judge's question, offered the basis of his opinion.  Based on all of the statements at the change of plea hearing, and his own observations, Judge Hart found Collins competent to plead guilty.  He accepted the plea, referred the matter to the probation department for a pre-sentence investigation, and set sentencing for June 15, 1990.

At the sentencing hearing, after reviewing the presentence report and hearing from both the government and the defense, Judge Hart sentenced Collins to 180 months incarceration, followed by 60 months of supervised release.  The prosecutor then moved to dismiss count two of the indictment, which motion Judge Hart granted.  This appeal followed.

## II.

Collins argues that, pursuant to 18 U.S.C. § 4241(a) (1988), he was entitled to a

---

1.  Judge Hart and Collins were no strangers to one another.  In 1983, Judge Hart accepted Collins's guilty plea to two bank robberies.  Transcript Volume ("Tr. Vol.") 4, at 3.  After Collins's attorney raised the issue of his client's competency in this case, Judge Hart asked if he had held a hearing in the earlier case.  *Id.* at 4–5.  The prosecutor reminded the judge that, in the 1983 case, Collins was examined at the Isaac Ray Center and determined not to be competent.  He was then sent to the federal facility at Springfield for further evaluation, where he was found to be competent to stand trial.  *Id.* at 5.  As here, in that case Collins entered a change of plea before trial and pleaded guilty.  (At Collins's change of plea hearing in this case, the government attorney suggested to Judge Hart that this is a pattern in Collins's behavior.  Tr. Vol. 6, at 9.)

Judge Hart also carried on some correspondence with Collins during the intervening years.  Defendant wrote him two letters, in December of 1984 and January of 1985.  Judge Hart responded on both occasions.  Tr. Vol. 4, at 8.  The judge also received a letter from Collins's wife sometime before the sentencing hearing.  Tr. Vol. 9, at 5.

hearing to determine his competency before the trial court accepted his waiver of insanity defense and guilty plea. Failure to hold a competency hearing, he continues, was a violation of his right to due process under the law. He asks this court to vacate his conviction and sentence, and to remand to the district court for further proceedings. We decline.

■ Unquestionably, due process requires a defendant to be competent to stand trial. *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). Also unquestionably, "the need for competency extends beyond trial to the sentencing phase of a proceeding." *United States v. Garrett,* 903 F.2d 1105, 1115 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). As we have noted several times before,

> [w]hen a court had made findings about the competency of a defendant, we will overturn those findings only upon a showing that they are clearly erroneous.... But when there has been no psychiatric examination or judicial determination, our review is comprehensive.

*Id.* at 1116, *quoting United States v. Johns,* 728 F.2d 953, 956 (7th Cir.1984) (citation omitted).

■ The facts in this case do not fit nicely into either category. The clearly erroneous standard applies when the district court has made findings after a hearing. That did not occur here. What did occur was that the defendant underwent multiple psychiatric examinations, with varying results. But because there were psychiatric examinations, it would seem that the second standard also is inapplicable. It is, however, precisely because of Collins's apparent on-again, off-again mental competence, and that he was never adjudicated competent at the conclusion of a hearing, that we will apply the second standard. We will also keep in mind that, although "our review is comprehensive, the district court retains a good deal of latitude in how it evaluates the need for a formal competency hearing." *Garrett,* 903 F.2d at 1116.

■ Our starting point is the command of the statute itself, which provides in relevant part:

> The court shall grant the [defense or prosecution] motion [for a competency hearing], or shall order such a hearing on its own motion, if there is *reasonable cause* to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a) (emphasis added). Clearly, only if Judge Hart had *reasonable cause* to believe that Collins was not mentally competent to understand that he was being prosecuted for bank robbery, which could result in a conviction and prison sentence, and that Collins was unable to consult with and assist his lawyer, should he have held a hearing *sua sponte.* Exactly what gives rise to reasonable cause, however, escapes definition. As the Supreme Court has said,

> There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). Extrapolating from *Drope,* there must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of his competency. As we held in *Chichakly v. United States,* the test is objective, and depends not on what the judge had in mind, but on the facts before him. 926 F.2d 624 (7th Cir.1991), *quoting Pedrero v. Wainwright,* 590 F.2d 1383, 1387–88 (5th Cir.1979).

■ So we turn to the facts before Judge Hart. When Collins first appeared before him on *this* matter (*see supra* note 1), Collins already had been examined by

five mental health care professionals, two while in the custody of the Attorney General at Butner, North Carolina, who concluded he was competent to stand trial. Although Judge Hart did not yet have those psychiatric evaluations in front of him, he was aware of Collins's psychiatric history and claimed incompetence. That knowledge alone is not sufficient to raise "reasonable cause" to believe the defendant incompetent. *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir.1977) (case under former § 4244, the predecessor to § 4241).

Nonetheless, Judge Hart granted the defense motion to hold a competency hearing. His grant of that motion does not mean he had reasonable cause to believe that Collins was incompetent; it means he followed the dictates of the statute. A defense motion for a competency hearing is not sufficient to create "reasonable cause" for the judge to believe the defendant is incompetent. *Cf. Chavez v. United States*, 656 F.2d 512, 516 (9th Cir.1981) (court need not have reasonable grounds to believe defendant incompetent to grant defense motion for psychiatric examination). Collins's motion for a competency hearing simply informed the court that the defendant, himself, put his competency in issue. But then, on November 6, 1989, before the date set for the hearing, Collins withdrew his motion.[2] He thereby removed the issue of his competence to stand trial from the case. Nine days later, on November 15, Judge Hart received copies of the psychiatric evaluations conducted by the five doctors before the case was placed on his calendar. Those reports informed the judge that:

- Collins "is mentally competent to stand trial. He has demonstrated a rational, as well as factual, understanding of the charge against him and has sufficient mental capacity to assist his attorney in the preparation of his defense and is able to communicate with his attorney in a rational and logical manner." Record ("R.") at 111, Report of Marjorie J. Muzyczka, Ph.D. (examination conducted between February 23, 1989 and March 8, 1989).
- Collins "currently manifests schizophrenia, undifferentiated type.... He would be unable to respond appropriately to the court or to requirements of courtroom behavior." *Id.*, Report of Mark Amdur, M.D. (examination conducted March 27 and 28, 1989). Dr. Amdur concluded Collins was not competent.
- Collins's "delusional and persecutory ideation clearly extends to his perceptions of his present legal status, and for this reason, it is my opinion that he is not presently competent to stand trial." *Id.*, Report of Orest E. Wasyliw, Ph.D. (examination conducted April 5 and May 3, 1989).
- Collins was malingering, and "[i]t is highly likely that Mr. Collins will continue to claim psychiatric illness and symptoms throughout the resolution of his legal situation.... It remains our opinion, however, that this behavior is voluntary and not secondary to psychiatric illness." *Id.*, Report of Kevin J. McBride, Ph.D., and Walter L. Cassidy, M.D. (examination conducted between July 29, 1989 and September 30, 1989). Drs. McBride and Cassidy found Collins "currently competent to stand trial." *Id.* Based on their evaluation of Collins, Warden J.T. Hadden prepared a Certificate of Restoration of Competency to Stand Trial, which accompanied the doctors' report.

Collins then raised the issue of his sanity at the time of the bank robbery: he filed a motion for psychiatric evaluation to determine the appropriateness of an insanity defense. Judge Hart granted the motion. In fact, he granted all of the motions, defense and prosecution alike, for evaluations of Collins regarding an insanity defense.

---

**2.** Certainly, withdrawal of a motion for a competency hearing does not create "reasonable cause." To so hold would require a farcical result: initially the court has no reasonable cause to believe defendant incompetent, but grants a defense motion for a hearing because it is required by the statute; but if the defense withdraws the motion (presumably because it no longer doubts the defendant's competency), that should trigger the court's doubt, or "reasonable cause." Nonsense.

On each occasion that defense counsel moved for a psychiatric evaluation, he repeatedly assured the court that defendant's current competence was not an issue. Consider:

- Collins's Motion to Permit Psychiatric Examination, filed November 15, 1989, states that Collins is "presently competent to stand trial." R. at 42.

- At a status hearing on December 21, 1989, defense counsel stated "there is no issue right now that Mr. Collins is not competent. The issue right now is whether he was sane at the time of the alleged bank robbery. We don't contest whether he is competent now, we concede that he is competent now, and he concedes that." Tr. Vol. 2, at 5.

- At a status hearing on January 19, 1990, defense counsel again stated "There is no dispute about [Collins's] competency at this time. We are dealing strictly with at the time of the offense." Tr. Vol. 1, at 3.

- At that same hearing, Collins himself addressed Judge Hart, seeking pretrial release. He told the judge: "I am right now standing before you cognizant and aware and in control and capable of controlling myself and my destiny." *Id.* at 8.[3]

- On February 20, 1990, at another status hearing, defense counsel, for a third time in as many status hearings, told the court: "Judge, we don't have any dispute about [Collins's] competence to stand trial, his competence right now. This whole examination goes toward whether he was insane or could have been insane at the time of the offense, that is what it is all about." Tr. Vol. 5, at 4.

▪ Judge Hart was entitled to rely on counsel's, and Collins's own statements, that he was competent. *Balfour v. Haws,* 892 F.2d 556, 561 (7th Cir.1989); *United States ex rel. Mireles v. Greer,* 736 F.2d 1160, 1165 (7th Cir.1984). Those are the two parties most familiar with the defendant's mental state. The judge also was entitled to draw inferences from the psychiatric evaluations, *id., citing Drope,* 420 U.S. at 174, 95 S.Ct. at 905, the most recent and thorough of which determined Collins to be competent. There was nothing that occurred to this point that should have given Judge Hart reasonable cause to doubt Collins's competence.

Then, at a status hearing on March 15, 1990, the prosecutor told the judge that she and the defense were "negotiating the matter." Tr. Vol. 8, at 2. Defense counsel informed the judge that the most recent psychiatric evaluation of Collins concluded he was insane at the time of the offense, and the defense would be filing its notice of intention to raise an insanity defense. *Id.* at 2–3. After the judge expressed uncertainty about how the parties could negotiate an insanity defense, the prosecutor explained that she believed "the basis of the insanity, as I understand it, will be that [Collins] did not remember what occurred on that day. I think it is possible that after reviewing the evidence he may—that may refresh his recollection in such a way that he does recall the events of that day." Tr. Vol. 8, at 6. Judge Hart cautioned that "if there is any doubt in my mind [about defendant's mental condition] I reject plea agreements.... I don't want anybody coming back later on and saying that they didn't know what was going on at a plea agreement...." *Id.* at 6. Judge Hart thus put the parties on notice that if he had reasonable cause to doubt the defendant's competence, either at the moment or at the time of the offense, he would not accept a plea.

▪ Fifteen days later Collins filed a waiver of insanity defense and changed his plea to guilty. He thus removed the issue of his sanity at the time of the offense from the case. A waiver of an insanity

---

**3.** When Collins orally moved for release pending trial, Judge Hart directed the Pretrial Services Office to prepare a report and recommendation. R. at 53. The report, entitled "Mental Health Assessment," was prepared by Barry J. Rankin, Mental Health Specialist with the Probation Office, and was filed with Judge Hart on January 19, 1990. R. at 60. Mr. Rankin reported that he found Collins to be "perfectly lucid and logical with above-average intelligence and articulation. His behavior and attitude were emotionally and socially appropriate." *Id.*

defense places no duty on the judge to inquire into a defendant's competence at the time of the offense. *United States v. Donohoe*, 458 F.2d 237, 239 (10th Cir.), *cert. denied*, 409 U.S. 865, 93 S.Ct. 157, 34 L.Ed.2d 113 (1972). The only remaining issue regarding Collins's competence was his competence to plead guilty, which Judge Hart resolved at Collins's change of plea hearing.

■ The test for competence to plead guilty is the same as competence to stand trial. *Chichakly*, 926 F.2d at 633. It requires the defendant to have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and that he have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). Judge Hart used the surest means to satisfy himself that Collins met the test for competence: he personally questioned him. Before doing so, however, Judge Hart asked both defense and prosecuting attorneys if Collins had been determined presently competent. Both answered affirmatively. Tr. Vol. 6, at 2. The judge then asked the defendant a series of questions filling four transcript pages, all of which Collins easily and coherently answered. *Id.* at 5–9.

Next, Judge Hart asked the prosecutor if, in her opinion, Collins was competent. When she answered yes, the judge asked for the basis of her opinion. She responded she based her opinion on both the conclusions of the doctors at Butner, and her own personal observations of the defendant on two occasions, one immediately after his arrest when she interviewed him, and a second two or three weeks earlier "where we reviewed the evidence with him extensively and had a dialogue with him, and at that time he was quite coherent, asked very cogent questions, seemed very aware of the situation and was very aware of the law and had in fact consulted with his attorney." Tr. Vol. 6, at 9–10. Judge Hart also asked defense counsel if, in his opinion, Collins was competent; he also responded affirmatively. He offered as the

basis for that opinion that "over the last year, I have noted a remarkable change in his awareness of what is going on around him and his ability to communicate with me, his understanding of what I tell him and his understanding of what is happening in court." *Id.* at 10. Judge Hart then stated: "Okay, I make the finding then based upon these representations and my own observations of the defendant that he is competent at the present time to offer a plea of guilty." *Id.* at 11.

■ To challenge Judge Hart's finding of competency at Collins's change of plea hearing successfully, Collins must present facts " 'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental competence.' " *Balfour*, 892 F.2d at 561, *quoting United States ex rel. Lewis v. Lane*, 822 F.2d 703, 706 (7th Cir.1987). In both his brief and at oral argument, the only facts Collins raises are the reports from Drs. Amdur and Wasyliw, both filed before Collins's several month stay at Butner. Those reports, standing alone, do not "generate a real, substantial and legitimate doubt" as to Collins's competence.

It is clear that Collins easily passed the test for competency to enter a guilty plea. Both adversaries represented to the court that Collins understood the nature of the proceedings, and had sufficient ability to consult with counsel. In fact, counsel for the defense repeatedly assured the court from the moment Collins withdrew his motion for a competency hearing that Collins was competent. As noted above, those statements carry weight because counsel, "more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings[.]" *Balfour*, 892 F.2d at 561, *quoting United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 500 (7th Cir.1982). Moreover, Judge Hart himself was in a unique position to make a determination about Collins's competency, given the correspondence that occurred between the two after Collins's convictions in 1983. It is also equally clear that nothing occurred during the months that this case was before Judge Hart—no

manifestation or conduct on Collins's part—that should have triggered in the judge's mind a reasonable doubt of Collins's competency.

## III.

As we said at the outset, our review would be comprehensive. It has been. There is nothing in the cold record before us, when viewed objectively, that leads us to conclude that Judge Hart erred by not ordering *sua sponte* a competency hearing. The judgment of the district court, therefore, is

AFFIRMED.