UNITED STATES of America, Plaintiff,

v.

Deborah BURNS, Defendant.

No. 90–CR–198.

United States District Court,
E.D. Wisconsin.

Jan. 11, 1993.

Steven M. Biskupic, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

David Saggio, Milwaukee, WI, for defendant.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court are the Government's motions: of November 17, 1992, (1) to adopt the Government's legal analysis for the Court's prior decision to deny defendant Deborah Burns' motion to suppress; and (2) to require defense counsel to present any claims that defendant is not competent to proceed.

Also before the Court are defendant's motions: of November 20, 1992 (1) to suppress statements she made to drug enforcement agents upon her underlying arrest; (2) to dismiss the Superseding Indictment against her; and of November 30, 1992; (3) to consider whether defendant is competent to stand trial.

## I. PROCEDURAL BACKGROUND

On November 14, 1990, a grand jury delivered a two-count Indictment charging defendant with possessing cocaine and traveling interstate in furtherance of unlawful drug distribution. On February 19, 1991, the grand jury delivered a three-count Superseding Indictment charging defendant with conspiring to possess and distribute cocaine, possession of cocaine, and traveling interstate in furtherance of unlawful drug distribution in violation of Titles 18 and 21 of the United States Code. Three co-defendants were named in the Count One, and one co-defendant was named in Count Two.

At her arraignment for the Superseding Indictment on March 22, 1991, defendant pled not guilty. A two-day jury trial commenced on September 9, 1991, and defendant was found guilty on all counts charged in the Superseding Indictment. On November 6, 1991, defendant was sentenced to 121 months incarceration as to Count One, 121 months incarceration as to Count Two, and sixty months as to Count Three, all to run concurrently, with five years of supervised release thereafter. Defendant filed notice of appeal on November 18, 1991.

On January 7, 1992, defendant brought a motion before this Court seeking a new trial based upon newly discovered evidence. On June 25, 1992, the Court granted defendant's motion. Thus, defendant's case is again before this Court in a pretrial posture.

## II. DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT

Defendant asserts that someone eavesdropped on confidential communications made to her attorney, David R. Saggio, during a conference at the Ozaukee County Jail on November 3, 1992. (Def. Aff. at 2.) As such, defendant argues, she has suffered an infringement of her Sixth Amendment right to counsel under *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. Unit B 1981), which infringement demonstrably prejudiced her defense under *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981), *United States v. Thompson*, 944 F.2d 1331 (7th Cir.1991), and *Tucker v. Randall*, 948 F.2d 388 (7th Cir.1991). (Def. Motion at 2–3.)

The Government argues that defendant's statements constitute mere speculation, not evidence, that confidential communications shared with her attorney were improperly overheard. (Government's Response at 2.) The Government further argues that even assuming the infringement occurred, no information material to defendant's trial was disclosed, nor does defendant so allege. As such, says the Government, defendant suffered no demonstrable prejudice, or substantial threat thereof, prerequisite to re-

lief under *Morrison*, 449 U.S. at 365, 101 S.Ct. at 668. (Government's Response at 2.)

The Court agrees with the Government. In *Morrison*, 449 U.S. at 364, 101 S.Ct. at 667, the Supreme Court narrowly circumscribed the relief available in Sixth Amendment cases: "[w]e have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* at 364, 101 S.Ct. at 668. The Supreme Court, it appears, considers dismissal of the indictment a particularly apocalyptic option. Even where, for instance, the defendant was totally denied assistance of counsel at his criminal trial, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), judicial action prevented counsel from being fully effective, *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and law enforcement officers improperly overheard pretrial conversations between a defendant and his lawyer, *O'Brien v. U.S.*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), "[n]one of [the consequent Sixth Amendment] deprivations ... resulted in the dismissal of the indictment." *Morrison*, 449 U.S. at 364–65, 101 S.Ct. at 668. In fact, noted the Supreme Court, "certain violations of the right to counsel may be disregarded as harmless error." *Id.* at 365, 101 S.Ct. at 668 (*comparing Moore v. Illinois*, 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) with *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967)). Thus, our approach must be to neutralize any taint, if at all, by narrowly tailored relief.

The premise ... is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding ... More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.... The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression.

*Morrison*, 449 U.S. at 365–66, 101 S.Ct. at 668–69.

The Court now finds that defendant has not shown demonstrable prejudice or a substantial threat thereof resulting from the alleged breach of confidence. Even assuming, *arguendo*, defendant's allegations *in toto*,[1] (*see generally* Def.Aff.), the only information improperly disclosed was, on its face, personal and unrelated to defendant's trial: "That during said conference, I spoke to my attorney about a friend who had died of AIDS during the early 1980's ... I told my attorney my dead friend's full name." (Def.Aff. at 2, ¶ 5.) The information allegedly disclosed, therefore, was not demonstrably prejudicial. Moreover, the alleged effect of said disclosure—defendant's *fear* of communicating with counsel—though gravely considered by the Court to whatever extent reasonable, here falls well outside the narrow proscription of *Morrison*, 449 U.S. at 365, 101 S.Ct. at 668. Demonstrable prejudice is, quite necessarily, an objective standard unreachable by defendant's subjective characterization of her Sixth Amendment circumstances. *See Id.* at 365, 101 S.Ct. at 668. Defendant's allegations are equally unsuited for lesser remedies, given that defendant does not allege improper fruits were garnered by the prosecution, and the Court, analyzing the record *sua sponte*, finds none.

---

1. The Court notes that the facts alleged by defendant, while plausibly the result of an improper breach of her attorney-client confidence by a third party, are also plausibly the result of other proper disclosures, possibly by the defendant herself. Moreover, the Court notes that some of the facts alleged, while sympathetic, reflect nothing more than the Hobbesian conditions of incarceration.

Defendant's motion to dismiss the superseding Indictment, therefore, will be denied. Whether or not there actually was a breach of confidence, the Court finds no resulting demonstrable prejudice or substantial threat thereof.

## III. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS; GOVERNMENT'S MOTION TO ADOPT LEGAL ANALYSIS FOR COURT'S DENIAL OF DEFENDANT'S EARLIER MOTION TO SUPPRESS[2]

### A. FACTS ALLEGED

#### 1. Defendant's version

Defendant asserts[3] that on November 11, 1990, Federal Drug Enforcement Administration agents obtained a search warrant allowing them to search the hotel room in the name of Mary Jennings at a Holiday Inn in Milwaukee, Wisconsin. Upon entering the hotel room, Agent Snyder introduced himself to defendant and asked her name. (September 10, 1991 Tr. at 114.) Defendant stated her name was "Katherine" and in response to a further question said she did not know what her last name was. (Tr. at 114.) Snyder told defendant to sit on the bed while he proceeded to search the hotel room. (Tr. at 114.)

During the search, defendant asserts, Snyder asked defendant what she was doing in Milwaukee, to which she replied that she was visiting friends. (Tr. at 114.) Snyder then asked which friends, to which defendant replied that she did not have any friends in Milwaukee. (Tr. at 114.) Shortly thereafter, Snyder found approximately one kilogram of a substance that included cocaine in defendant's room.

Defendant further asserts that, during Snyder's testimony, Snyder indicated that he did not read, nor did he hear any other law enforcement official read, defendant her rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before the cocaine was discovered. (Tr. at 118.) Snyder also testified that defendant wanted to leave when he entered her hotel room, (Tr. at 121–22), but he told her she had to remain on the bed and could not leave until he completed his search. (Tr. at 116–17.) Defendant was detained later that same day.

#### 2. Government's version

The Government, incorporating its arguments of November 17, 1992,[4] asserts[5] that

---

**2.** Whereas the Government incorporates arguments supporting its motion of November 17, 1992 in its response of November 30, 1992 to defendant's motion of November 20, 1992, the Court will consolidate consideration of both parties' motions here.

**3.** Defendant's factual allegations, unless otherwise noted, are from Defendant's Brief in Support of Motion to Suppress Statements at 2–3.

**4.** Therein, the Government moved the Court to adopt the Government's legal analysis for the Court's decision to deny defendant's earlier motion to suppress. As explanation therefor, the Government alleged the following procedural facts, hereafter incorporated in the Government's response to defendant's new motion to suppress.

At the first trial, the Government contends, it introduced three of defendant's statements: first, her response as to her identity in the hotel hall when confronted by Snyder with a search warrant for her room; second, in the room, her reply to Snyder when asked what she was doing in Milwaukee; and third, her unsolicited response upon discovery of the cocaine in her room. (Tr. at 126–27.)

Defendant's second counsel moved to suppress these statements. This Court held, after taking testimony outside the presence of the jury, that the mid-trial motion to suppress was untimely, *see* Rule 12(b), Fed.R.Crim.P., but that even if the motion had been timely raised, it would have been denied. (Tr. at 122–23.) The Court specifically found that there was no arrest and that defendant's response upon discovery of the cocaine was voluntary. (Tr. at 122–23.) However, the Government asserts, no detailed legal rationale for these alternative findings was given by the Court. On appeal, defendant's third counsel claimed that it was ineffective assistance for the second counsel to fail to bring an earlier motion. Thus, claims the Government, the parties were left to speculate as to how, under the relevant standard, the Court would have resolved the motion had it been raised pretrial. *See United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir.1990). [It was in order to moot such speculation if a second appeal were to arise from the case now before the Court, therefore, that the Government sought an expanded ruling on the Court's legal rationale for denying the motion to suppress.] (Government's Motion at 2.)

**5.** See note 5 on page 412.

Agent Snyder was assisting the execution of a valid search warrant when he encountered defendant coming out of the search situs—defendant's hotel room. (Tr. at 114.) At that point, Snyder asked defendant her name. (Tr. at 114.) Defendant gave a false reply. (Tr. at 114.) Snyder told defendant to sit on the bed while the warrant was executed. (Tr. at 114.) Although defendant wanted to leave, Snyder detained her during the search because the primary investigative agent had not yet arrived. (Tr. at 114.) Defendant was held for no more than five minutes. (Tr. at 115, 117.) During that time, Snyder asked defendant what she was doing in Milwaukee. (Tr. at 114.) Defendant answered with conflicting statements. (Tr. at 114.) Then, when the cocaine was found, defendant volunteered that the cocaine was not hers; no question had been put to her. (Tr. at 116.)

## B. ARGUMENTS

Defendant argues essentially that she was custodially detained during the search of her hotel room and Snyder's questions, in that they called for a testimonial response from defendant, *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) should have been prefaced by a *Miranda* warning. (Def. Brief at 3–4.) As such, defendant argues, defendant's statements during the search should be suppressed.

The Government contends that defendant's detention was investigative, not custodial. *See Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *United States v. Vanichromanee*, 742 F.2d 340, 344 (7th Cir.1984). As such, *Miranda* warnings were not required. *United States v. Fazio*, 914 F.2d 950, 955–56 & n. 6 (7th Cir.1990); *United States v. Boden*, 854 F.2d 983, 995 (7th Cir.1988). (Government's Motion at 3.) Moreover, argues the Government, even during custodial detention, background inquiries into identification and residence are permitted before the warnings are given. *United*

*States v. Edwards*, 885 F.2d 377, 384–86 (7th Cir.1989). (Government's Motion at 3–4.) Finally, argues the Government, voluntary statements made before or after *Miranda* warnings do not violate the Fourth Amendment. *Id.* at 387. (Government's Motion at 4.)

Defendant responds that because her freedom of movement was restrained to a degree associated with formal arrest, she was subject to custodial detention and should have been given a *Miranda* warning under *Fazio*, 914 F.2d at 955, and, cited therein, *United States v. Hocking*, 860 F.2d 769, 772 (7th Cir.1988). (Def. Response at 3.) Moreover, argues defendant, the holding in *Boden*, 854 F.2d 983, cited by the Government, does not support failure to give defendant her *Miranda* warnings, even assuming defendant was in investigative detention, in that her detention was not common and unthreatening in a manner analogous to a traffic stop. (Def. Response at 3.) Defendant further argues that, because they were reasonably expected to produce an incriminating response and were not routine, Snyder's questions were not of the preliminary type permissible under *Edwards*, 885 F.2d at 384–86. (Def. Response at 4.)

## C. DISCUSSION

■ The Court finds initially that defendant's brief detention during the search of her hotel room, under a valid search warrant, for less than ten minutes, absent force or the express threat of force, was reasonable: "If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home." *Michigan*, 452 U.S. at 704, 101 S.Ct. at 2595.

Though a valid "seizure" subject to the constraints of the Fourth Amendment, however, defendant's detention was not

**5.** The Government's factual allegations, unless otherwise noted, are from Government's Mo- tions Prior to Second Trial at 2–3.

necessarily an arrest.[6] "A police officer may, short of an arrest, detain an individual briefly 'in order to determine his identity or to maintain the status quo momentarily while obtaining more information....'" *Vanichromanee*, 742 F.2d at 344 (citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)). Such detention is analogous to a *Terry* investigative stop: "a brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." *Boden*, 854 F.2d at 992 (relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under *Terry*, an investigative stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. *See also United States v. Borys*, 766 F.2d 304, 308 (7th Cir.1985).

Ultimately, therefore, the court must determine "simply whether defendant was subject to a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Fazio*, 914 F.2d at 955 (citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)). Here, defendant was detained, by the verbal request of Agent Snyder, only long enough to obtain her identification and execute the search warrant on her (presumably small and quickly searchable) hotel room. The Court thus cannot find that, from the perspective of a reasonable person in defendant's situation, she was subjected to a degree of restraint associated with that of a formal arrest. *Cf. Fazio*, 914 F.2d at 955 (defendant's brief detention in small room during search of restaurant was not custodial). The Court must conclude, therefore, that defendant's detention was investigative, not custodial.

As such, warnings under *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, were not required. "*Miranda* warnings are required to be given only to suspects who are subjected to 'custodial interrogation.'" *Fazio*, 914 F.2d at 954 (citing *Illinois v. Perkins*, 496 U.S. 292, 295, 110 S.Ct. 2394, 2396, 110 L.Ed.2d 243 (1990)). As to investigative detentions, on the other hand, "[t]he comparatively nonthreatening character of detentions of this sort explains the absence of any suggestions to our opinions that *Terry* stops are subject to the dictates of *Miranda*." *Boden*, 854 F.2d at 995 (relying on *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). Defendant's assertion that her situation, because it was neither a routine traffic stop nor "an ordinary situation for the average person," (Def.Response at 3), is an exception to the *Boden* rule is, in the absence of any supporting authority, not persuasive.

■ The Court also agrees with the Government that, under the rule of *Edwards*, 885 F.2d at 385–86, even if defendant had been in custodial detention, Snyder's inquiries would not have constituted interrogation. Even assuming the facts as alleged by defendant, the Court finds that Snyder's questions plainly concerned only defendant's identity and residence, and thus are analogous to routine inquiries asked during booking. *See United States v. Monzon*, 869 F.2d 338, 342 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). Moreover, defendant's assertions to the contrary notwithstanding, (Def.Response at 4), it cannot be said that Snyder should have known, based only upon the circumstances of the warrant, that his questions were likely to provoke an incriminating response. *See Edwards*, 885 F.2d at 385 (relying on *Rhode Island v. Innis*, 446 U.S. 291, 301–02 nn. 7, 8, 100 S.Ct. 1682, 1690 nn. 7, 8, 64 L.Ed.2d 297 (1980) (intent of police, design of questioning, and knowledge of unusual susceptibility of defendant to a particular form of persuasion all relevant in determination)). The Court finds it difficult to imagine, in

---

6. The rationale for the exception has been elsewhere explicated: "The reason for creating the intermediate category, the investigatory stop, is not merely the appealing symmetry of a 'sliding scale' approach—though that is relevant....

But beyond that, it is hard to see how criminal investigations could proceed if the police could never restrict a suspect's freedom of action, however briefly, without having probable cause to make an arrest." *Boden*, 854 F.2d at 992.

fact, what alternative questions Snyder might have posed in an effort to identify the hotel room's occupant, a permissible purpose incident to the lawful execution of the search warrant.

As the Court finds there existed no custodial detention of defendant, nor any interrogation even if defendant was in custody, the Court concludes—and confines said conclusion to the facts of this case—that *Miranda* warnings were unnecessary, and defendant's statements are thus admissible. Defendant's motion to suppress, therefore, will be denied. As such, the Government's motion to adopt its legal analysis for the Court's denial of defendant's prior motion to suppress will be dismissed as moot.

## IV. DEFENSE COUNSEL'S MOTION REGARDING DEFENDANT'S COMPETENCE TO STAND TRIAL; GOVERNMENT'S MOTION TO REQUIRE DEFENSE COUNSEL TO PRESENT ANY CLAIMS THAT DEFENDANT IS INCOMPETENT TO PROCEED

As defense counsel has moved the Court to consider defendant's competence, the Government's motion to require defense counsel to present any such claims will be dismissed as moot.

### A. FACTS ALLEGED

#### 1. Defense counsel's version

Defense counsel asserts that numerous items have caused him to believe defendant may not be competent to stand trial. First, the bail report received by defense counsel and the Magistrate Judge indicates under the section entitled "Health" that the defendant had a mental breakdown or nervous breakdown around 1978. The breakdown apparently was due to stress. As a result of this, she was under the care of a private psychiatrist for approximately two weeks and received the prescription drug lithium. The bail report also states that: "As a result of this breakdown, she has a dual personality and lives in a world of fantasy. Due to the defendant's mental illness, she tends to travel to various loca-tions at a moment's notice." (Def.Motion at 2, Exhibit A.) The presentence report, asserts defense counsel, contained similar assessments of the defendant's mental health.

Defense counsel further asserts that a letter written by defendant's mother, Alice Mac Sneed, sums up the condition of the defendant. In that letter addressed to the trial court, defendant's mother indicates that defendant has suffered from, depression and mood swings since her breakdown in 1978. (Def.Motion at 3, Exhibit B.) Defendant's mother further indicates that she does not believe that defendant is aware of her surroundings and that she needs help both physically and mentally. (Def.Motion at 3, Exhibit B.)

Defense counsel also states that after her sentencing, defendant was housed in a mental ward at Lexington Federal Penitentiary. From that time until recently, defendant was observed by one Dr. Washington, who has been unable to provide a diagnosis of defendant.

#### 2. Government's version

The Government asserts that during the prior proceedings, defendant demonstrated that she understood the nature of the proceedings against her by the following statements. Defendant admitted that she gave her attorney only the information she thought was needed to defend her, but that more may have been necessary. (Sentencing Tr. at 24.) Defendant said she had done legal research and felt the jury had not been properly instructed. (Tr. at 24.) Defendant said she knew she had been accused and convicted of participating in illegal drug distribution. (Tr. at 36–38.) Defendant claimed a witness (Valdez) against her at trial had lied when he testified that defendant had talked to him about being a Cojab courier. (Tr. at 39.) Finally, the Government asserts, defendant knew she was going to be sentenced and that there was little, if anything, she could say to prevent it, though she knew she could appeal. (Tr. at 40.)

## B. DISCUSSION

 Under *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), conviction of a defendant while he is legally incompetent violates constitutional due process. In the Seventh Circuit, the standard for legal competency is whether a defendant has sufficient ability to consult with her lawyer to a reasonable degree of rational understanding; and, further, whether she has an understanding of the proceedings against her. *United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). Where there exists "reasonable cause" to believe a lack thereof, the Court may order a competency hearing and/or a psychiatric or psychological evaluation. 18 U.S.C. § 4241(a), (b).

 Reasonable cause escapes precise definition. *United States v. Collins*, 949 F.2d 921, 924 (7th Cir.1991). The Supreme Court itself has so stated:

> There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Id.* at 924 (citing *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975)). Mere knowledge of a defendant's psychiatric history, claimed incompetence, or motion for a competency hearing, however, is clearly insufficient to raise reasonable cause. *Collins*, 949 F.2d at 925 (relying on *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir.1977) (case under former Section 4244, predecessor to Section 4241); *Chavez v. United States*, 656 F.2d 512, 516 (9th Cir.1981)). In fact, the Seventh Circuit has held that "there must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of competency." *Collins*, 949 F.2d at 924. *See also Chichakly v. United States*, 926 F.2d 624, 633 (7th Cir.1991). Absent specific evidence thereof, "there is

a presumption that a criminal defendant is mentally competent to stand trial." *Id. See also* 18 U.S.C. § 17(b) (defendant's burden to prove incompetence).

In determining whether sufficient manifestation exists for reasonable cause, the Seventh Circuit's recent analysis of circumstances similar to those of defendant here is instructive. In *United States v. Teague*, 956 F.2d 1427, *rehearing en banc denied*, (7th Cir.1992), the court held that defendant's alleged mental problems did not warrant a competency hearing where the presentence report revealed defendant was diagnosed as suffering from major depression, generalized anxiety disorder and borderline personality disorder. These afflictions, the court said, "are not psychiatric problems that would prevent a defendant from understanding the proceedings against him and interfere with his ability to confer with his attorney on his own behalf." *Id.* at 1432. *See also Collins*, 949 F.2d at 925 (failing to hold competency hearing where defendant demonstrated lucidity in proceedings, despite defendant's psychiatric history and conflicting diagnoses affecting competency, including "schizophrenia" and "delusional and persecutory ideation," was not reversible error). The *Teague* court also noted that defendant had "failed to point to any bizarre or questionable conduct of defendant at trial or during the sentencing hearing that would evince mental incompetency to the court or lead the judge to question [defendant's] competency." *Teague*, 956 F.2d at 1432. Finally, the court ruled it was entitled to rely heavily on defense counsel's representations as to defendant's competence: "Counsel for a defendant, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings and assist counsel with his defense." *Id.* (citing *Chichakly*, 926 F.2d at 633). *See also Collins*, 949 F.2d at 926.

 In light of the foregoing authority, and upon review of all the evidence presented, the Court now concludes no reasonable cause exists warranting further competency evaluation of defendant. Essen-

tially, defendant has failed to overcome the presumption that she is competent, *Chichakly*, 926 F.2d at 633; 18 U.S.C. § 17(b), which presumption is buttressed by her articulate rhetoric and apparent comprehension at sentencing. (*See* Sentencing Tr. at 24, 36–40.) While the Court does not foreclose the possibility it might find otherwise where it demonstrably affected her present legal abilities, defendant's alleged nervous breakdown in 1978 and subsequent psychiatric treatment are analogous to the defendants' encumbrances in *Teague*, 956 F.2d at 1432, and *Collins*, 949 F.2d at 925, and have not been shown to presently affect her consultations with counsel or understanding of the prosecution against her. Moreover, the Court finds there exists no evidence of "bizarre or questionable" conduct by defendant in her many previous proceedings before this Court, nor does defendant allege any, (*see* Def.Motion), notwithstanding any inferences that might be drawn from her bail report and her mother's letter (Def.Motion at 3, Exhibit B). *See Teague*, 956 F.2d at 1432. Perhaps most telling, the Court finds, is defense counsel's own statement of defendant's position: "While it is unclear whether the defendant is *currently* incompetent to stand trial, the bail report and post-conviction report are indicative of the defendant's mental state *in the past*." (Def.Motion at 3 (emphasis added).) Notwithstanding his motion for an evaluation of his client's competency, which is itself of no probative value in the search for reasonable cause, *Collins*, 949 F.2d at 925; *Chavez*, 656 F.2d at 516, defense counsel makes no allegations that, by words or conduct, defendant evinces any present incompetence. At bottom, defense counsel grounds his request only on an assertion that "[t]his [evidence of defendant's psychiatric treatment in the past] provides evidence that she may still be battling mental problems." (Def.Motion at 4.) As such, the Court finds no reasonable cause to suspect that defendant lacks the ability to rationally consult with her attorney and understand her prosecution, and defense counsel's motion will be denied.

## V. SUMMARY

For all the reasons given above: (1) defendant's motions to dismiss the indictment and suppress statements are HEREBY DENIED; (2) the government's motions to adopt legal analysis for the Court's denial of defendant's earlier motion to suppress and to require defense counsel to present any claims that defendant is incompetent to proceed are HEREBY DISMISSED; and (3) defense counsel's motion regarding defendant's competence to stand trial is HEREBY DENIED.

SO ORDERED.