124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jorge Luis GONZALEZ-ARANDA, Defendant-Appellant.
 No. 97-1227.
 United States Court of Appeals, Seventh Circuit.
 July 9, 1997.
July 25, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
 Before BAUER, FLAUM, and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 On August 13, 1996, a man wearing a stocking over his face and holding a knife attempted to rob a First National Bank of Chicago branch in Carol Stream, Illinois. The attempt failed and the perpetrator fled. Minutes later, Jorge Luis Gonzalez-Aranda[1] was arrested for the attempted robbery. An attorney from the Federal Public Defenders Office was appointed to represent him. Gonzalez-Aranda was indicted for attempted bank robbery in violation of 18 U.S.C. § 2113(a) and (d). He was arraigned and entered a plea of not guilty. He entered into a plea agreement and appeared before the district court to change his plea to guilty. At the sentencing hearing, he was sentenced to 57 months in prison. The question on appeal is whether the district court should have ordered, sua sponte, a competency examination for Gonzalez-Aranda before imposing the sentence.[2] We affirm the judgment.[3]
 
 
 2
 At the change of plea hearing in October 1996, the district court asked Gonzalez-Aranda several preliminary questions about his background.[4] The district court then asked him whether he had taken any prescription or other drugs in the past twenty-four hours. He responded that he had taken "medicine." When asked what type of medicine, he replied, "I don't know, it is the medicine they give me for psychiatry." The district court proceeded to inquire into Gonzalez-Aranda's history of psychiatric treatment. Gonzalez-Aranda explained that he had been confined for two months of psychiatric care in Cuba around 1991 and that he did not recall what sort of medication he received. Gonzalez-Aranda also indicated that he was currently meeting with a doctor once every week. The following colloquy then took place:
 
 
 3
 Q. Do you understand what is going on in this proceeding now?
 
 
 4
 A. Yes.
 
 
 5
 Q. Do you have any difficulty in understanding my questions?
 
 
 6
 A. No.
 
 
 7
 Q. Have you had any difficulty in conferring with your attorney, with regard to changing your plea from guilty to not guilty?
 
 
 8
 A. No.
 
 
 9
 THE COURT: Do either of you counsel have any doubts as to the defendant's competency to offer a plea of guilty at this time?
 
 
 10
 MR. GARCIA [Assistant U.S. Attorney]: I do not, your honor.
 
 
 11
 MR. FLYNN [Gonzalez-Aranda's counsel]: No, your honor. I have spoken to him about the issue. We have discussed the various pleas, not guilty by reason of mental disease or defect. I believe he is competent. I think he does understand. I think he has had mental problems. I think they might have some slight impact on his sentence, as to where we are in the guidelines range that he might fall. But I have no doubt he is competent to plead guilty.
 
 
 12
 THE COURT: The Court finds that the defendant is competent to offer a plea of guilty at this time.
 
 
 13
 The district court engaged in further colloquy with Gonzalez-Aranda about his satisfaction with his attorney and whether he had discussed the charges with his attorney. The district court also covered the topics set forth in Fed.R.Crim.P. 11 for determining whether Gonzalez-Aranda understood the consequences of a guilty plea, was making the plea voluntarily, and had committed the acts alleged. The district court found that Gonzalez-Aranda "is fully competent and capable of entering an informed plea, and that [his] plea is a knowing and voluntary plea, supported by the independent basis of fact containing each of the essential elements of the offense." Accordingly, the district court accepted the plea.
 
 
 14
 The presentence report (PSR) describes further statements by Gonzalez-Aranda concerning his mental health. He reported that in 1990 or 1991, while in the Cuban military, he "experienced feelings of paranoia, and began hearing voices." As a result, he underwent psychiatric treatment for two months in a military hospital. Gonzalez-Aranda related that "after he was released, he experienced no further difficulties." However, he also stated that the day before the attempted bank robbery, he was involved in an accident which extensively damaged his car. After the accident, according to Gonzalez-Aranda, "he began hearing voices again, and felt paranoid." He stated that at the time of the attempted robbery, "many voices were talking at once, and there was a lot of noise in the bank, and he became very confused."[5]
 
 
 15
 Gonzalez-Aranda was detained at the Metropolitan Correctional Center (MCC). The day following his arrest, he was interviewed by MCC psychology staff. Gonzalez-Aranda "presented himself as depressed, and expressed symptoms of auditory hallucinations." He was initially placed on suicide watch, and after further assessment, was diagnosed as having a "schizo-affective disorder." An antidepressant and an antipsychotic "effectively addressed [his] symptoms."
 
 
 16
 Yet, two weeks after he entered his guilty plea, Gonzalez-Aranda requested that his medication be discontinued. He gave no reason for his request to the staff. He stated at the presentence interview that he had stopped taking the medication "because he was feeling so much better." However, he also reported that in the week after ceasing the medication, the voices had come back, usually at night. He indicated that he had last heard the voices a week before the presentence interview.
 
 
 17
 At the sentencing hearing in January 1997, the district court confirmed that Gonzalez-Aranda had discussed the PSR with his attorney, and heard arguments as to the appropriate sentence. Defense counsel stated that he had discussed with Gonzalez-Aranda the possibility of pleading not guilty by reason of insanity (NGI). He also indicated that while Gonzalez-Aranda's "mental condition affects him throughout his life," an NGI plea did not seem to be in his best interest. Defense counsel continued:
 
 
 18
 I have also talked to him [at various times] throughout this case about the possibility ... of a competency exam. At the time we entered the plea, and at all times we had been in court, I have not had any question about his competency.
 
 
 19
 There have been times over at the MCC where he has been listless and laid on his bed for as long as four days, inactive, and not eating. At times, he was off his medication.
 
 
 20
 * * *
 
 
 21
 When I saw him, he was disconsolate because he was thinking about the effect it would have on his children. He has always supported his children, he has always done what he could do working as many hours as he was able to find.
 
 
 22
 * * *
 
 
 23
 I think when he is on the medication--he made a decision there in the MCC not to take the medication for a while. I think he now realizes that that was not a wise decision. He is back on the medication now.
 
 
 24
 What concerns me is placement in prison. I think that there should be a recommendation for some long-term mental health care treatment. I know at times, during the time I have represented him, he has had some suicidal ideation, and he has been despondent. I think he feels great remorse and shame for what happened.
 
 
 25
 When Gonzalez-Aranda addressed the court, he asked "for forgiveness before your Honor and before everybody here who I have mistreated." He then added, "The only thing I would like to ask the Judge is to give me the death penalty." Counsel received a moment to confer with his client. Counsel then informed the district court that Gonzalez-Aranda was crying and was "obviously distraught," and did not "at this point have anything more to tell the Court." The district court sentenced Gonzalez-Aranda to the bottom of the guideline range, viewing that as a sufficient deterrent in this case, and also ordered him to undergo mental health treatment. The district court then entered judgment.
 
 
 26
 On appeal, Gonzalez-Aranda contends that the district court should have ordered, sua sponte, a competency examination prior to sentencing. A district court is directed to order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). "[T]here must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of his competency.... [T]he test is objective, and depends not on what the judge had in mind, but on the facts before him." United States v. Zarnes, 33 F.3d 1454, 1473 (7th Cir.1994) (quoting United States v. Collins, 949 F.2d 921, 924 (7th Cir.1991)), cert. denied sub nom. Bland v. United States, 115 S.Ct. 2286 (1995); see also United States v. Morgano, 39 F.3d 1358, 1373-74 (7th Cir.1994), cert. denied sub nom. Palermo v. United States, 115 S.Ct. 2559 (1995).
 
 
 27
 A defendant is presumed to be competent and bears the burden of proving otherwise. Morgano, 39 F.3d at 1373 (citing Chichakly v. United States, 926 F.2d 624, 633 (7th Cir.1991). "[I]n order to justify a retrospective competency hearing, the appellant 'must present facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental competence." United States v. Teague, 956 F.2d 1427, 1431-32 (7th Cir.1992) (emphasis deleted) (quoting Collins, 949 F.2d at 927) (internal quotation omitted).
 
 
 28
 Gonzalez-Aranda's counsel specifically stated at the plea hearing, "I have no doubt he is competent to plead guilty." Counsel implied at the sentencing hearing that he still did not have "any question about [Gonzalez-Aranda's] competency,' given that Gonzalez-Aranda was back on his medication. This court has concluded, time and again, that significant weight is afforded to defense counsel's representation that his client is competent. See, e.g., Morgano, 39 F.3d at 1374; Teague, 956 F.2d at 1432; Collins, 949 F.2d at 927. Defense counsel is usually in the best position to determine that the defendant is able to understand the proceedings and assist in his defense. See, e.g., Morgano, Teague, and Collins, supra. There is no reason to think otherwise in this case; counsel's statements to the court indicate that he was quite aware of his client's state of mind and psychological history. Counsel's representations provide a strong basis for the district court's determination at the plea hearing that Gonzalez-Aranda was competent, as well as for a conclusion that he was competent at sentencing as well.
 
 
 29
 On appeal, Gonzalez-Aranda does not point to anything that would override counsel's representations about his competency. It does appear that Gonzalez-Aranda has had a history of psychological problems. However, the PSR indicated that medication relieved his symptoms. Gonzalez-Aranda was taking this medication at the time of his plea hearing and sentencing hearing. The transcript of the plea hearing does not reflect that he said or did anything out of the ordinary; he seems to have understood and been responsive to questioning. Likewise for the sentencing hearing, until perhaps the very end, when he asked for the death penalty, started crying, and was 'obviously distraught." However, this portion of the transcript seems to indicate a manifestation of complete remorse more than incompetency (inability "to understand the nature and consequences of the proceedings against him or to assist properly in his defense," 18 U.S.C. § 4241(a)).[6]
 
 
 30
 The judgment is AFFIRMED.
 
 
 
 [1]
 It appears that the defendant's last name is "Gonzalez-Aranda," or alternatively "Gonzalez,' and not "Aranda" as listed on this court's docket sheet. Moreover, although the spelling "Gonzales" is found on the covers of both parties' briefs and on several other occasions in the appellant's briefs, the spelling "Gonzalez" is used in the record
 
 
 [2]
 At oral argument, appellate counsel asserted that he was not claiming ineffective assistance by counsel in the district court. In other words, assuming that such a claim was raised in the brief, the claim was withdrawn at oral argument. Thus we shall not consider whether the claim might have any merit; nor, however, do we consider the claim waived
 
 
 [3]
 Counsel for Gonzalez-Aranda indicated in the briefs that he was contemplating initiation of 28 U.S.C. § 2255 proceedings in the district court. At oral argument, counsel stated that he had prepared a § 2255 motion that he wanted to file in the district court but was unsure if he could file during the pendency of this appeal. Counsel for the government responded with his understanding that the § 2255 motion had already been filed. Whether or not any § 2255 proceedings have commenced, we do not think that the prospect of such proceedings affect this appeal. Counsel for Gonzalez-Aranda requests that we delay resolution of this appeal, or alternatively remand the case, to permit the completion of § 2255 proceedings. He reasons that if the district court were to rule in his favor, this court would no longer need to decide this appeal. However, we see no reason to wait. We do not need to learn what the district court thinks before deciding whether the district court should have ordered a competency hearing sua sponte. The issue is best resolved now, for a § 2255 motion does not serve as 'a substitute for a direct appeal"--meaning that errors not presented on direct appeal might not be available in § 2255 proceedings. Barnickel v. United States, 113 F.3d 704, 706 (7th Cir.1997) (citations omitted); McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir.1996) (quotation omitted)
 
 
 [4]
 Gonzalez-Aranda was provided a translator to interpret questions from English to Spanish and to translate his answers in Spanish back to English
 
 
 [5]
 Gonzalez-Aranda's alleged car accident and the confusion that he allegedly suffered in the bank provide context for his statements at the plea hearing that he "didn't have the intention" to commit a robbery when he went into the bank, but that "[i]t was just something that--I just got it into my head right at the time, it was because of the problems I was having with my car."
 
 
 [6]
 Gonzalez-Aranda notes that he sent a letter (pro se ) to the trial judge after sentencing. In the pro se letter, Gonzalez-Aranda requested an appeal and appointment of new counsel for the appeal. He further indicated that he would argue on appeal that the district court should have ordered a competency examination for him, in light of evidence of his psychiatric disorders, and that the district court should not have accepted the plea or proceeded to sentencing. Before our court, Gonzalez-Aranda claims that the district court should have read the letter and realized that a competency examination was necessary. However, the district court imposed the sentence several days before Gonzalez-Aranda sent the letter. Even assuming that the letter might be deemed a motion to withdraw the guilty plea, it came too late. See Fed.R.Crim.P. 32(e) (after sentence is imposed, "a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255"). Gonzalez-Aranda does not suggest, and it does not appear, that the letter should be construed as a § 2255 motion (either to vacate the plea or the sentence); rather, the letter was outlining the basis for an appeal